# KOENIGSBERGER *v.* RICHMOND. SILVER MINING COMPANY.

# RICHMOND SILVER MINING COMPANY *v.* KOENIGSBERGER.

## ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF SOUTH DAKOTA.

Nos. 260, 220.   Argued April 4, 5, 1895.—Decided April 22, 1895.

Under the act of February 22, 1889, c. 180, for the division of the Territory of Dakota into two States, and for the admission of those and other States into the Union, and providing that the Circuit and District Courts of the United States shall be the successors of the Supreme and District Courts of each Territory, as to all cases pending at the admission of the State into the Union, "whereof the Circuit or District Courts by this act established might have had jurisdiction under the laws of the United States, had such courts existed at the time of the commencement of such cases," the Circuit Court of the United States for the District of South Dakota has jurisdiction, at the written request of either party, of an action brought in a District Court of that part of the Territory of Dakota which afterwards became the State of South Dakota, by a citizen of that part of the Territory, since a citizen of the State, against a citizen of another State, and pending on appeal in the Supreme Court of the Territory at the time of the admission of the State into the Union.

In an action against a corporation for the breach of a contract to transfer a certain number of its shares to the plaintiff, he testified to their value; and the defendant's president, being a witness in its behalf, testified that they were worth half as much; the jury returned a verdict for the larger sum; exceptions taken by the defendant to the competency of the plaintiff's testimony on the question of damages were sustained; and the court ordered that a new trial be had, unless the plaintiff would file a remittitur of half the damages, and, upon his filing a remittitur accordingly, and upon his motion, rendered judgment for him for the remaining half.   *Held:* no error of which either party could complain.

THE case is stated in the opinion.

*Mr. G. C. Moody* and *Mr. S. S. Burdett* for Koenigsberger. *Mr. Eben W. Martin* was on their brief.

*Mr. Wager Swayne* for the Richmond Silver Mining Company.   *Mr. Edwin Van Cise* was on his brief.

MR. JUSTICE GRAY delivered the opinion of the court.

This was an action at law, commenced October 17, 1883, in the district court of the first judicial district of the Territory of Dakota, in and for Lawrence County, by Victor Dorne against the Richmond Silver Mining Company. The complaint alleged that the plaintiff, on December 11, 1882, sold and conveyed to the defendant a certain interest in mining claims in that county; that the defendant, in consideration thereof, agreed to transfer and deliver to the plaintiff, within three weeks, 14,285$\frac{5}{7}$ shares of its corporate stock; and that the defendant transferred and delivered to the plaintiff 3500 shares of its stock, and neglected and refused to deliver him any more; to the damage of the plaintiff in the sum of $15,000. The answer was a general denial.

Upon a trial by jury in that court, in April, 1889, the plaintiff introduced evidence tending substantially to prove the contract and breach alleged; and no objection of variance was interposed. The plaintiff testified that the shares which the defendant had not transferred to him were worth, at the time of the breach, from one to two dollars a share. The defendant's president, being called and examined as a witness in its behalf, testified that he was one of the original incorporators, and owned 19,000 or 20,000 shares; that he bought them at fifty cents a share, and that the stock had been sold in the market at that price. Part of the plaintiff's testimony as to the value of the shares was to matters of opinion, and to a contract of sale between himself and a third person, which the plaintiff had not carried out; and was admitted by the court against the objection and exception of the defendant. Other exceptions taken by the defendant to the rulings and instructions of the court were immaterial or groundless, and require no particular notice. The court, in accordance with a request of the defendant, instructed the jury that, if they were satisfied that the plaintiff was entitled to recover, the measure of his damages would be the value of the 10,785$\frac{5}{7}$ shares of the defendant's stock which he had not received, being the price at which he might with reasonable diligence have purchased an

equivalent amount of the stock in the nearest market, together with interest thereon at the rate of seven per cent per annum.

The jury returned a verdict for the plaintiff in the sum of $15,315.70. The defendant filed a motion for a new trial, for newly discovered evidence, as shown by affidavits, tending to impeach the plaintiff's testimony as to the value of the shares; as well as for excessive damages, and for insufficiency of the evidence to sustain the verdict, and for errors in law occurring at the trial and excepted to by the defendant. The court overruled the motion, and rendered judgment on the verdict for the sum found due by the jury, and interest; and on September 28, 1889, allowed a bill of exceptions tendered by the defendant.

On October 8, 1889, the defendant appealed to the Supreme Court of the Territory of Dakota, and gave bond to prosecute the appeal, and on the same day entered the appeal in that court; and it was there pending on November 2, 1889, when the southern part of the Territory of Dakota, including Lawrence County, was admitted into the Union as the State of South Dakota, under the act of Congress of February 22, 1889, c. 180, for the division of Dakota into two States, and for the admission of the States of North Dakota, South Dakota, Montana and Washington into the Union, the material provisions of which are copied in the margin.[1]

---

[1] SEC. 21. That each of said States, when admitted as aforesaid, shall constitute one judicial district, the names thereof to be the same as the names of the States, respectively; and the Circuit and District Courts therefor shall be held at the capital of such State for the time being, and each of said districts shall, for judicial purposes, until otherwise provided, be attached to the eighth judicial circuit, except Washington and Montana, which shall be attached to the ninth judicial circuit. . . . The Circuit and District Courts for each of said districts, and the judges thereof, respectively, shall possess the same powers and jurisdiction and perform the same duties required to be performed by the other circuit and district courts and judges of the United States, and shall be governed by the same laws and regulations.

SEC. 22. That all cases of appeal or writ of error, heretofore prosecuted and now pending in the Supreme Court of the United States, upon any record from the Supreme Court of either of the Territories mentioned in this act, or that may hereafter lawfully be prosecuted upon any records

The case was thereupon entered in the Supreme Court of the State of South Dakota. On February 4, 1890, the defend-

---

from either of said courts, may be heard and determined by said Supreme Court of the United States. And the mandate of execution or of further proceedings shall be directed by the Supreme Court of the United States to the Circuit or District Court hereby established within the State succeeding the Territory from which such record is or may be pending, or to the Supreme Court of such State, as the nature of the case may require: Provided, that the mandate of execution or of further proceedings shall, in cases arising in the Territory of Dakota, be directed by the Supreme Court of the United States to the Circuit or District Court of the District of South Dakota, or to the Supreme Court of the State of South Dakota, or to the Circuit or District Court of the District of North Dakota, or to the Supreme Court of the State of North Dakota, or to the Supreme Court of the Territory of North Dakota, as the nature of the case may require. And each of the circuit, district and state courts herein named shall, respectively, be the successor of the Supreme Court of the Territory, as to all such cases arising within the limits embraced within the jurisdiction of such courts, respectively, with full power to proceed with the same, and award mesne or final process therein; and that from all judgments and decrees of the Supreme Court of either of the Territories mentioned in this act, in any case arising within the limits of any of the proposed States prior to admission, the parties to such judgment shall have the same right to prosecute appeals and writs of error to the Supreme Court of the United States, as they shall have had by law prior to the admission of said State into the Union.

SEC. 23. That in respect to all cases, proceedings and matters, now pending in the supreme or district courts of either of the Territories mentioned in this act, at the time of the admission into the Union of either of the States mentioned in this act, and arising within the limits of any such State, whereof the Circuit or District Courts by this act established might have had jurisdiction under the laws of the United States, had such courts existed at the time of the commencement of such cases, the said circuit and district courts, respectively, shall be the successors of said supreme and district courts of said Territory ; and in respect to all other cases, proceedings and matters, pending in the supreme or district courts of any of the Territories mentioned in this act at the time of the admission of such Territory into the Union, arising within the limits of said proposed State, the courts established by such State shall, respectively, be the successors of said supreme and district territorial courts ; and all the files, records, indictments and proceedings relating to any such cases shall be transferred to such circuit, district and state courts, respectively, and the same shall be proceeded with therein in due course of law ; but no writ, action, indictment, cause or proceeding, now pending, or that prior to the admission of any of the States mentioned in this act shall be pending, in

ant filed in that court a petition, verified by oath, to transfer the case to the Circuit Court of the United States for the District of South Dakota, because the defendant was, at the time of bringing the action, and still was, a corporation and citizen of the State of New York, and the plaintiff was then a citizen of that portion of the Territory of Dakota which was now the State of South Dakota, and still was a citizen of South Dakota. On March 1, 1890, after notice and hearing, that petition was granted, and the case was transferred accordingly. 1 So. Dak. 20.

The Circuit Court of the United States for the District of South Dakota, afterwards, upon notice and hearing, denied a motion of the plaintiff to remand the case to the Supreme Court of the State of South Dakota; 43 Fed. Rep. 690; and then heard the case upon the record from that court, "except that the court declined to consider the affidavits used in support of the motion for new trial, and limited its consideration of the appeal from the judgment, and from the order over-ruling the motion for a new trial, to the assignments of errors of law occurring during the trial — to which action of the court, in declining to consider such affidavits and limiting its consideration aforesaid, counsel for defendant and appellant at the time duly excepted — and, after taking this cause under advisement, and upon due consideration, this court, being of the opinion that reversible error had been committed in the trial court upon the question of damages, but that the judgment of the trial court could be affirmed for one half the amount

---

any territorial court in any of the Territories mentioned in this act, shall abate by the admission of any such State into the Union, but the same shall be transferred and proceeded with in the proper United States circuit, district or state court, as the case may be: Provided, however, that in all civil actions, causes and proceedings, in which the United States is not a party, transfers shall not be made to the Circuit and District courts of the United States, except upon written request of one of the parties to such action or proceeding, filed in the proper court; and in the absence of such request such cases shall be proceeded with in the proper state courts.

SEC. 25. That all acts or parts of acts in conflict with the provisions of this act, whether passed by the legislatures of said Territories or by Congress, are hereby repealed. 25 Stat. 682–684.

thereof, provided the plaintiff would consent to remit the balance," ordered that the judgment be reversed and a new trial granted, unless the plaintiff should file, within ten days, a consent in writing to remit one half of that judgment, in which event a judgment of affirmance might be entered for one half of such original judgment, with interest thereon from the date of its entry, and without costs to either party.

In accordance with that order, the plaintiff filed a remittitur of one half of the judgment; and, on his motion, the court ordered the judgment to be affirmed to the extent of one half thereof, amounting, with interest, to the sum of $8823.96. Each party tendered and was allowed a bill of exceptions, and sued out a writ of error; and the original plaintiff, Dorne, having died since the entry of the case in this court, his writ of error was prosecuted by Sebastian Koenigsberger, as his administrator.

The most important question in this case is whether the Circuit Court of the United States for the District of South Dakota had jurisdiction of it. This question has been fully argued at the bar, but would be noticed by this court, had it not been suggested by either party.

The facts upon which the decision of this question depends are not in dispute. The action was brought in a district court of that part of the Territory of Dakota which afterwards became the State of South Dakota. The plaintiff, at the time of bringing the action, was a citizen of that part of the Territory, and, upon the admission of the State of South Dakota into the Union, became a citizen of that State. The defendant, at the time of the bringing of the action, and ever since, was a corporation of the State of New York. The merits of the case did not involve any question under the Constitution and laws of the United States. The case, after trial and judgment in the district court of the Territory, was pending on appeal in the Supreme Court of the Territory, at the time of the admission of the State into the Union; and, upon such admission, was entered in the Supreme Court of the State, and was thence transferred, on petition of the defendant, to the Circuit Court of the United States, which after-

wards denied a motion of the plaintiff to remand it to the Supreme Court of the State.

The defendant's petition to transfer the case to the Circuit Court of the United States having been filed in the Supreme Court of the State before it had taken any action in the case, there has been no waiver of any right which the defendant had to have the case heard and determined in the Circuit Court of the United States. *Carr* v. *Fife,* 156 U. S. 494; *Ames* v. *Colorado Railroad,* 4 Dillon, 251.

The plaintiff relies on the provisions of section 23 of the act of Congress of February 22, 1889, c. 180, for the admission of South Dakota and other States into the Union, by which, in respect to all cases, pending in the supreme or in a district court of either of the Territories therein mentioned, at the time of the admission of either of the States named into the Union, and arising within the limits of the State, "whereof the Circuit or District Courts by this act established might have had jurisdiction under the laws of the United States, had such courts existed at the time of the commencement of such cases," those circuit and district courts shall be the successors of the supreme and district courts of the Territory; and, in respect to all other cases so pending and arising, the courts established by the State shall be the successors of such territorial courts. 25 Stat. 683.

The plaintiff's contention is that, as the Circuit and District Courts of the United States are declared to be the successors of the territorial courts in respect of those cases only, of which such circuit and district courts "might have had jurisdiction under the laws of the United States, had such courts existed at the time of the commencement of such cases," the Circuit Court could not acquire jurisdiction of this case by reason of the diversity of citizenship between the parties, because at the time of the commencement of the case, although the defendant was a citizen of a State, yet the plaintiff was a citizen of a Territory, and the Circuit Courts of the United States have no jurisdiction, by reason of diversity of citizenship, of a suit between a citizen of a Territory and a citizen of a State. *New Orleans* v. *Winter,* 1 Wheat. 90; *Barney* v. *Baltimore,* 6 Wall. 280, 287.

But this contention appears to us to rest upon too strict and literal a construction of a single clause of the act in question, inconsistent with the other provisions and the general purposes of the act, as well as with the course of previous legislation and judicial decision upon the subject.

So long as a Territory of the United States remains in the territorial condition, and the United States have entire dominion and sovereignty over it, national and municipal, there is ordinarily no occasion to distinguish how far the subjects, committed by Congress to the decision of the courts of the Territory, are or are not of a Federal character. *American Ins. Co.* v. *Canter*, 1 Pet. 511, 546; *Benner* v. *Porter*, 9 How. 235, 242, 243. But when a Territory is admitted into the Union as a State, upon the same footing as all the other States, the territorial government and courts cease to exist, and matters of national cognizance remain within the power and jurisdiction of the nation, but other matters come under the power and jurisdiction of the State; and then it becomes important to distinguish, as to pending suits, whether they are of a Federal or of a municipal character, and to provide by law that those of the first class should proceed in the courts of the United States, and those of the second class in the courts of the new State. The courts of the United States, inferior to this court, having no jurisdiction except as conferred by Congress, congressional legislation is necessary to enable those courts, after the admission of the State into the Union, to take jurisdiction of cases previously commenced in the courts of the Territory, and not yet finally adjudged. And such legislation has been so construed and expounded by this court as to give effect, as far as possible, consistently with its terms and with the Constitution of the United States, to the apparent intention of Congress to vest in the courts of the United States the jurisdiction of such cases, so far as they are of a Federal character, either because of their arising under the Constitution and laws of the United States, or because of their being between citizens of different States. *Freeborn* v. *Smith*, 2 Wall. 160; *Express Co.* v. *Kountze*, 8 Wall. 342, 350, 351; *Baker* v. *Morton*, 12 Wall. 150, 153.

The Circuit Court and the District Court of the United States for the District of South Dakota, described, in the clause in section 23 of the act of February 22, 1889, on which the plaintiff relies, as "the Circuit or District Courts by this act established," are parts of the general judicial system of the United States; and, by the express terms of section 21 of the act, are respectively to have the same powers and jurisdiction, and to be governed by the same laws and regulations, as the other circuit and district courts of the United States.

By section 22, in all cases pending in this court, on appeal or writ of error, from the Supreme Court of the Territory, at the time of the admission of the State into the Union, and afterwards decided and a mandate therein sent down by this court, the Circuit or District Court of the United States, or the Supreme Court of the State, "as the nature of the case may require," is declared to be the successor of the Supreme Court of the Territory. This phrase, "as the nature of the case may require," would seem to treat the Circuit or District Court of the United States as the successor of the Supreme Court of the Territory in all cases of Federal jurisdiction, whether by reason of the subject-matter, or of the parties.

Then comes section 23, enacting that the Circuit and District Courts of the United States established by this act shall be the successors, both of the supreme and of the district courts of the Territory, as to all cases pending at the time of the admission of the State into the Union, of which such circuit or district court might have had jurisdiction under the laws of the United States, had it existed at the time of the commencement of the action; provided, however, that all civil actions, to which the United States are not a party, shall be proceeded with in the proper court of the State, unless transferred to the Circuit Court or District Court of the United States upon the written request of one of the parties.

It is to be remembered that, generally speaking, the jurisdiction of the Circuit Court of the United States neither fails nor attaches by reason of a change in the citizenship of a party pending the suit, and that, when that court takes jurisdiction of a suit already pending, the requisite citizenship must have

existed at the time of its commencement. *Morgan* v. *Morgan,* 2 Wheat. 290; *Clarke* v. *Mathewson,* 12 Pet. 164; *Gibson* v. *Bruce,* 108 U. S. 561; *Kellam* v. *Keith,* 144 U. S. 568. The reference, in the clause in controversy, to the time of the commencement of the action, may well have been inserted to prevent a case, in which there was at that time no diversity of citizenship, from being transferred to the Circuit Court of the United States by reason of the parties afterwards becoming citizens of different States.

Upon the whole matter, the reasonable conclusion appears to us to be that Congress, by the description "whereof the Circuit or District Courts by this act established might have had jurisdiction under the laws of the United States, had such courts existed at the time of the commencement of such cases," intended to designate cases of which those courts might have had jurisdiction under the laws of the United States, had those courts, like the other circuit and district courts of the United States generally, existed, at the time in question, in a State of the Union, whose inhabitants consequently were citizens of that State. According to that hypothesis, the plaintiff would have been a citizen of the State of South Dakota, and the defendant a citizen of the State of New York, at the time of the commencement of the action, and the Circuit Court of the United States would have had jurisdiction by reason of such diversity of citizenship. The case was therefore rightly transferred, at the written request of the defendant, upon the admission of the State of South Dakota into the Union, to the Circuit Court of the United States.

This construction of the act is in accord with all the reported decisions in the courts, Federal or state, held within the Eighth Circuit. *Dorne* v. *Richmond Co.,* 1 So. Dak. 20, and 43 Fed. Rep. 690; *Herman* v. *McKinney,* 43 Fed. Rep. 689; *Miller* v. *Sunde,* 1 No. Dak. 1. It is supported by the judgment of the Circuit Court of Appeals of the Ninth Circuit, in *Blackburn* v. *Wooding,* 15 U. S. App. 84, overruling the decisions of single judges in that circuit, cited in behalf of the plaintiff. *Strasburger* v. *Beecher,* 44 Fed. Rep. 209; *Dunton* v. *Muth,* 45 Fed. Rep. 390; *Nickerson* v. *Crook,* 45 Fed. Rep.

658; *Carson* v. *Donaldson*, 45 Fed. Rep. 821; *Johnson* v. *Bunker Hill Co.*, 46 Fed. Rep. 417. And the like construction appears to have been assumed by Mr. Justice Miller and Judge Dillon to be the true one of the similar clause in the act of June 26, 1876, c. 147, § 8, relating to Colorado. 19 Stat. 62; *Ames* v. *Colorado Railroad*, 4 Dillon, 250, 258, 260.

The suggestion, made in behalf of the plaintiff, that the Circuit Court of the United States could not take jurisdiction, because, at the time of the admission of the State into the Union, the case was pending, not in a court of original jurisdiction, but on appeal in the Supreme Court of the Territory, is inconsistent with the terms and the intent of the act of Congress. Section 23 of that act provides that as to all cases, coming within the definition already considered, pending at that time either "in the supreme or district courts of the Territory," the Circuit and District Courts of the United States "shall be the successors of said supreme and district courts of said Territory;" that all the files and records relating to such cases shall be transferred to those courts; and that "the same shall be proceeded with therein in due course of law." At the time of the admission of the State into the Union, this case, after trial and verdict in the district court of the Territory, and motion for a new trial made and overruled, and exceptions allowed, in that court, was pending on appeal in the Supreme Court of the Territory, which, by the laws of the Territory, was empowered, upon an appeal from a judgment, to "review any verdict, decision, or intermediate order, involving the merits and necessarily affecting the judgment," and "to reverse, affirm or modify the judgment." Dakota Code of Civil Procedure, §§ 411, 412. After the admission of the State into the Union, and the transfer of the case by the Supreme Court of the State to the Circuit Court of the United States, the Circuit Court, as said by Mr. Justice Miller, in a like case in Colorado, might do all that was left undone in the Supreme Court of the Territory; the case was pending in that court for review, and the Circuit Court might proceed as that court would have proceeded if it had retained the case; and, whether the judgment should be affirmed or reversed, could

enter the proper judgment, and, if necessary, could itself try the case again. *Bates* v. *Payson*, 4 Dillon, 265.

The remaining question in the case concerns the proceeding by which the Circuit Court, being of opinion " that reversible error had been committed in the trial court upon the question of damages," ordered the judgment to be reversed and a new trial granted, unless the plaintiff should file a remittitur of one half of the judgment; and, upon his filing such a remittitur, affirmed the judgment as to the other half thereof.

Both parties excepted to this proceeding. But there was no error therein, of which either party has a right to complain.

The plaintiff, by not insisting on the alternative, allowed him by the court, of having a new trial of the whole case, but electing the other alternative allowed, of filing a remittitur of half the amount of the original judgment, and thereupon moving for and obtaining an affirmance of that judgment as to the other half, waived all right to object to the order of the court, of the benefit of which he had availed himself. *Kennon* v. *Gilmer*, 131 U. S. 22, 30; *New York Elevated Railroad* v. *Fifth National Bank*, 135 U. S. 432.

As to the defendant, the matter stands upon different grounds. The plaintiff at the trial had testified that the shares of the defendant's stock, which the defendant had not transferred to him as agreed, were worth from one to two dollars a share. The defendant's president, called and examined as a witness in its behalf, testified that their market value was half a dollar a share. The amount of the verdict and the original judgment thereon, as may readily be seen by computation, was for no more than a dollar a share, with interest from the time of the breach to the time of the trial. The final judgment of the Circuit Court was for half that amount, or no more than the testimony of the defendant's president showed that the shares were worth, with interest. As the only error found by the Circuit Court, or appearing on the record, was in the measure of damages, no injustice was done to the defendant by accepting the testimony which it had introduced as to the value of the shares. The bill of exceptions affording the

means of distinguishing so much of the plaintiff's claim as was in dispute from that part which was practically not disputed, the court, without invading the province of the jury, might permit the plaintiff, in lieu of a new trial, to take judgment for the latter part only. *Bank of Kentucky* v. *Ashley*, 2 Pet. 327; *Northern Pacific Railroad* v. *Herbert*, 116 U. S. 642; *Hopkins* v. *Orr*, 124 U. S. 510; *Arkansas Co.* v. *Mann*, 130 U. S. 69; *Kennon* v. *Gilmer*, 131 U. S. 22, 29; *Washington & Georgetown Railroad* v. *Harmon*, 147 U. S. 571, 590.

This being so, the question whether the Circuit Court erred, in excluding from its consideration the affidavits filed in support of the defendant's motion for a new trial, becomes unimportant; for their whole effect, if admitted, could only be to impeach the plaintiff's testimony as to the amount of his damages, whereas the court gave no effect to that testimony, and proceeded wholly upon the testimony introduced by the defendant.

*Judgment affirmed.*