SAND SPRINGS HOME et al. v. TITLE GUARANTEE & TRUST CO et al.

(Circuit Court of Appeals, Eighth Circuit. December 13, 1926.)

No. 7404.

1. **Appeal and error ⚌790(2)—Question of jurisdiction to enjoin state court proceeding does not become moot on granting of new trial in state court pending appeal.**

Where, pending appeal from decree of District Court dismissing bill to enjoin proceeding in state suit, a new trial was granted in such suit, question involved does not become moot, since case is still pending.

2. **Courts ⚌508(1)—Federal court may in proper case enjoin state court proceedings before judgment, as well as afterwards.**

In cases where federal court may with propriety enjoin proceeding of state court in order to protect its own judgment, it may so act as well before the state court proceeding goes to judgments as afterwards.

3. **Courts ⚌508(1)—Federal court of equity will enjoin state court proceedings impairing jurisdiction, orders, or decrees of federal court (Judicial Code, § 265 [Comp. St. § 1242]).**

Federal court of equity will, on proper showing, enjoin proceedings in state court which would have the effect of defeating or impairing jurisdiction of federal court, or orders or decrees which it has made, notwithstanding Judicial Code, § 265 (Comp. St. § 1242).

4. **Courts ⚌508(2)—Bill alleging proceeding in state court invalidates decree of United States Court for Indian Territory held insufficient to authorize injunction; "courts of United States" (Const. art. 3; art. 4, § 3, cl. 2; Act June 16, 1906, § 13 [Comp. St. § 1088], and §§ 16, 17).**

Allegations of bill to enjoin state court proceedings, on ground that effect was to invalidate proceedings theretofore had in United States Court for Indian Territory, held insufficient to state cause of action in equity, since Indian courts were not "courts of United States," within Const. art. 3, but were legislative courts established by Congress under article 4, § 3, cl. 2, whose jurisdiction ceased on state of Oklahoma being organized, and jurisdiction was not vested in United States court to protect judgments by reason of Act June 16, 1906, § 13 (Comp. St. § 1088), and sections 16, 17.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Courts of the United States.]

Appeal from the District Court of the United States for the Northern District of Oklahoma.

Suit by the Sand Springs Home and another against the Title Guarantee & Trust Company, guardian of Millie Naharkey, an incompetent, and others. Decree dismissing the bill, and plaintiffs appeal. Affirmed.

Charles A. Coakley, of Tulsa, Okl. (Stuart, Sharp, Cruce & Coakley and E. J. Doerner, all of Tulsa, Okl., Paul P. Pinkerton, of Sand Springs, Okl., and M. W. Eddleman, of Ardmore, Okl., on the brief), for appellants.

Earl Bohannon, of Muskogee, Okl. (John H. Mosier, of Muskogee, Okl., and Owen Owen and Elmer J. Lundy, both of Tulsa, Okl., on the brief), for appellees.

Before BOOTH, Circuit Judge, and PHILLIPS, District Judge.

BOOTH, Circuit Judge. This is an appeal from an order and decree dismissing a bill for want of equity. The purpose of the bill was to enjoin defendants from taking further proceedings in a suit pending in the state court of Tulsa county, Okl., in which Millie Naharkey, by her guardian, Title Guarantee & Trust Company, is plaintiff, and Charles Page and Sand Springs Home are defendants. The allegations of the bill in this court are in substance as follows:

Millie Naharkey was a Creek Indian and had an allotment. She died, leaving surviving her husband, Moses, and son, Sammy. Moses thereafter married Martha Red, and by her had a daughter called Millie Naharkey. Moses died in 1904, leaving surviving his wife, Martha, his son, Sammy, by his first wife, and his daughter, Millie, by his second wife. He left an allotment of his own. In January, 1907, Sammy brought suit (No. 247 Law) in the United States Court in the Indian Territory, Western District, asking that he be declared the sole heir of his mother, Millie, and entitled to the lands which his father inherited from her, subject to dower of the second wife, and further asking for partition of the other lands between the wife and Millie and himself. Martha, the wife, answered, asking for one-third of the lands in lieu of dower and relinquishing her dower right. A guardian ad litem was appointed for Millie. An answer was filed on her behalf, asking for partition. A decree was entered March 16, 1907, directing a partition and appointing commissioners to carry out the decree. The commissioners made their report. May 20, 1907, a decree was entered approving the report and partitioning the land.

In August, 1908, Sammy conveyed to Bechtel and Page the land here in controversy, which was part of the land that had been partitioned to him. The deed was approved by the county court and recorded. Martha also quitclaimed the land to Page, and Page and Bechtel thereafter by mesne conveyances conveyed the land to the Sand Springs Home, appellant herein.

The bill in the instant suit further sets out the various acts of Congress by which the

United States Court in the Indian Territory was established, and its jurisdiction defined; also the acts of Congress adopting certain Arkansas statutes for the Indian Territory. The bill further alleges:

"That on or about the 10th day of June, 1922, the respondent Millie Naharkey, by and through her guardian, * * * commenced a suit in the district court of Tulsa county, Okl., for the recovery of said lands and an accounting for the rents and profits taken therefrom by these complainants, and by the allegations of her pleadings in said suit said respondent attacked and called in question the validity of the said judgment and decree of the United States Court for the Western District of the Indian Territory, heretofore set up and referred to, and alleged and stated as her ground for recovery in said suit in said state district court that said judgment of said United States court was void and had no force and effect, and sought by her said petition in said state court to have her rights in said lands determined and adjudicated in contravention of and in total disregard of the judgment of the said United States court heretofore referred to, and sought to require these complainants to account to her for a one-fourth interest in all lands and profits and the proceeds of all oil and gas that might have been taken from the said lands involved; that thereafter, on or about the 7th day of August, 1925, the said Millie Naharkey, by and through her guardian * * * did recover a purported judgment in said cause and said court for an undivided one-fourth interest in the lands involved, and a further purported judgment requiring these complainants to account to her for one-fourth of all rents and profits and one-fourth of the proceeds of all oil and gas derived from the said real estate involved herein, said court holding in said cause that the said judgment and proceedings heretofore had in the said United States Court for the Western District of the Indian Territory were void, invalid, and of no force and effect."

The prayer of the bill in the case at bar is for an injunction to prevent further proceedings in said action in the state court, either in the accounting or in the enforcement of the judgment obtained.

A motion to dismiss the bill in the case at bar was made, on the ground that the court had no jurisdiction; that all of the parties were citizens of Oklahoma; that the suit did not arise under the Constitution or laws of the United States; that the suit sought to enjoin proceedings in a state court in contravention of section 265 of the Judicial Code (Comp. St. § 1242); and also on the ground that the facts stated were insufficient to constitute a valid cause of action in equity. The motion to dismiss was granted, and the bill dismissed for want of equity. The present appeal followed.

[1, 2] At the outset we meet a motion to dismiss the appeal, on the ground that the question involved has become moot, inasmuch as a new trial has been granted of the case in the state court. We think this motion should be denied. The real question has not become moot; the case is still pending, and in it is still the question whether the judgment in the partition suit in the United States Court in the Indian Territory was valid. In cases where the federal court may with propriety enjoin proceedings in the state court in order to protect its own jurisdiction or its own judgment, it may enjoin as well before the state court proceeding goes to judgment as afterward. Root v. Woolworth, 150 U. S. 401, 14 S. Ct. 136, 37 L. Ed. 1123; Julian v. Central Trust Co., 193 U. S. 93, 24 S. Ct. 399, 48 L. Ed. 629; Gunter v. Atlantic Coast Line, 200 U. S. 273, 26 S. Ct. 252, 50 L. Ed. 477; Wabash R. v. Adelbert College, 208 U. S. 38, 28 S. Ct. 182, 52 L. Ed. 379; Swift v. Black Panther Co., 244 F. 20 (C. C. A. 8); Hickey v. Johnson, 9 F.(2d) 498 (C. C. A. 8).

Turning to the merits of the appeal: Appellant supports its contention that the bill states a cause of action in equity by an argument which runs in substance as follows:

(1) Courts of equity have jurisdiction to interfere and effectuate their own decrees by injunction, in order to avoid relitigation of questions once settled between the same parties.

(2) The United States Court in the Indian Territory by its decree of March 16, 1907, and its supplemental decree of May 20, 1907, determined that the title to the lands in question was in Sammy Naharkey, from whom plaintiff in the case at bar derives its title.

(3) Defendant in the case at bar, Millie Naharkey, was a party to the proceedings in the United States Court in the Indian Territory, and was bound by the decrees of that court above mentioned.

(4) Millie Naharkey is plaintiff in the action pending in the state court of Tulsa county, Okl., in which action she attacks and seeks to have declared null and void the decrees of the United States Court in the Indian Territory, above mentioned.

(5) The District Court of the United States for the Northern District of Oklahoma, in view of the foregoing facts, has the power and is in duty bound to issue an in-

junction against further proceedings in the action in the state court, for the purpose of protecting and effectuating the decrees above mentioned of the United States Court in the Indian Territory.

[3] We are not persuaded by the argument. It is true that, notwithstanding the provisions of section 265 of the Judicial Code, a federal court of equity will on a proper showing enjoin proceedings in a state court which would have the effect of defeating or impairing the jurisdiction of the federal court, or the orders or decrees which it has made. See cases cited, supra.

[4] But the principle thus stated had no application to the case at bar, and the contention of appellant, that the facts stated in the bill bring the case within the principle, rests upon an erroneous conception of the character of the United States Court in the Indian Territory, which rendered the decrees in question, and of its relation to the District Court of the United States for the Northern District of Oklahoma.

The origin and history of the United States Court in the Indian Territory is to be found in the following acts of Congress: Act of March 1, 1889 (25 Stat. 783, c. 333); Act of May 2, 1890 (26 Stat. 81, c. 182); Act of March 1, 1895 (28 Stat. 693, c. 145); Act of June 7, 1897 (30 Stat. 62, 83, c. 3); Act of June 28, 1898 (30 Stat. 495, 496, c. 517); Act of July 1, 1898 (30 Stat. 571, 591, c. 545); Act of May 27, 1902 (32 Stat. 245, 275, c. 888); Act of April 28, 1904 (33 Stat. 573, c. 1824).

The court thus established, though in unorganized territory, was quite similar to the courts established by Congress in organized territories. These courts were not courts of the United States within the meaning of article 3 of the Constitution of the United States. They were legislative courts, established by virtue of the power of the Congress to make rules and regulations respecting the territories of the United States (Const. art. 4, § 3, cl. 2). The jurisdiction of these legislative courts was what the Congress made it. Usually, as in the case of the United States Court in the Indian Territory, the jurisdiction extended far beyond the limits fixed by article 3 of the Constitution of the United States for courts of the United States. The judges were appointed for a fixed term, usually four years, subject to removal. American Ins. Co. v. Canter, 1 Pet. 511, 7 L. Ed. 242; Benner v. Porter, 9 How. 235, 13 L. Ed. 119; Clinton v. Englebrecht, 13 Wall. 434, 20 L. Ed. 659; McAllister v. United States, 141 U. S. 174, 11 S. Ct. 949, 35 L. Ed. 693;

Koenigsberger v. Richmond Co., 158 U. S. 41, 15 S. Ct. 751, 39 L. Ed. 889; Wallace v. Adams, 204 U. S. 415, 27 S. Ct. 363, 51 L. Ed. 547; Summers v. United States, 231 U. S. 92, 101, 34 S. Ct. 38, 58 L. Ed. 137; Southern Surety Co. v. Oklahoma, 241 U. S. 582, 584, 36 S. Ct. 692, 60 L. Ed. 1187.

The pleadings and procedure in these legislative courts were governed, not by the Revised Statutes of the United States, but directly by congressional enactment or by territorial legislation. Thiede v. Utah Territory, 159 U. S. 510, 16 S. Ct. 62, 40 L. Ed. 237; Summers v. United States, 231 U. S. 92, 102, 34 S. Ct. 38, 58 L. Ed. 137.

In American Ins. Co. v. Canter, supra, the court said:

"These courts, then, are not constitutional courts, in which the judicial power conferred by the Constitution on the general government can be deposited. They are incapable of receiving it. They are legislative courts, created in virtue of the general right of sovereignty which exists in the government, or in virtue of that clause which enables Congress to make all needful rules and regulations, respecting the territory belonging to the United States. The jurisdiction with which they are invested is not a part of that judicial power which is defined in the third article of the Constitution, but is conferred by Congress, in the execution of those general powers which that body possesses over the territories of the United States. Although admiralty jurisdiction can be exercised in the states in those courts only which are established in pursuance of the third article of the Constitution, the same limitation does not extend to the territories. In legislating for them, Congress exercises the combined powers of the general and of a state government."

In Benner v. Porter, supra, the court said:

"The distinction between the federal and state jurisdictions, under the Constitution of the United States, has no foundation in these territorial governments; and consequently no such distinction exists, either in respect to the jurisdiction of their courts or the subjects submitted to their cognizance. They are legislative governments, and their courts legislative courts; Congress, in the exercise of its powers in the organization and government of the territories, combining the powers of both the federal and state authorities. There is but one system of government, or of laws operating within their limits, as neither is subject to the constitutional provisions in respect to state and federal jurisdiction. They are not organized under the Constitution, nor subject to its complex distribution of the

powers of government, as the organic law; but are the creations, exclusively, of the legislative department, and subject to its supervision and control."

In Clinton v. Englebrecht, supra, the court said:

"There is no Supreme Court of the United States, nor is there any District Court of the United States, in the sense of the Constitution, in the territory of Utah. The judges are not appointed for the same terms, nor is the jurisdiction which they exercise part of the judicial power conferred by the Constitution or the general government. The courts are the legislative courts of the territory, created in virtue of the clause which authorizes Congress to make all needful rules and regulations respecting the territories belonging to the United States."

In McAllister v. United States, supra, the court quoted the foregoing excerpts with approval.

When the state of Oklahoma was created, in part out of the Indian Territory, and the courts of the newly organized state, and the newly created Circuit Courts and District Courts of the United States for the newly created judicial districts, were established, the United States Court in the Indian Territory went out of existence. Its jurisdiction ceased. The newly created courts were entirely distinct from the United States Court in the Indian Territory. They were also unrelated to it, except in so far as a relationship may be said to have been created as to pending cases by express legislation of Congress. Some of the pending cases were transferred to the state courts; some to the Circuit and District Courts of the United States—the division depending upon the character of the cases. See sections 16 and 17, Act of June 16, 1906 (34 Stat. 267, c. 3335). It required legislation to transfer the pending cases to the new courts. Benner v. Porter, supra; Koenigsberger v. Richmond Co., supra.

In the case last cited the court said (158 U. S. at page 48 [15 S. Ct. 754]):

"But when a territory is admitted into the Union as a state, upon the same footing as all the other states, the territorial government and courts cease to exist, and matters of national cognizance remain within the power and jurisdiction of the nation, but other matters come under the power and jurisdiction of the state; and then it becomes important to distinguish, as to pending suits, whether they are of a federal or of a municipal character, and to provide by law that those of the first class should proceed in the courts of the United States, and those of the second class in the courts of the new state. The courts of the United States, inferior to this court, having no jurisdiction except as conferred by Congress, *congressional legislation is necessary to enable those courts, after the admission of the state into the Union, to take jurisdiction of cases previously commenced in the courts of the territory, and not yet finally adjudged.*" (Italics ours.)

Neither the section of the act of Congress which created the new Circuit and District Courts of the United States (section 13 of the act last above cited [Comp. St. § 1088]), nor the sections which conferred on the new courts jurisdiction over pending cases which were transferred (sections 16 and 17), vested in those courts jurisdiction to protect the judgments and decrees of the defunct United States Court in the Indian Territory. Only from the authority of Congress could such jurisdiction be derived.

In Kline v. Burke Construction Co., 260 U. S. 226, 234, 43 S. Ct. 79, 82 (67 L. Ed. 226, 24 A. L. R. 1077), the court said:

"Only the jurisdiction of the Supreme Court is derived directly from the Constitution. Every other court created by the general government derives its jurisdiction wholly from the authority of Congress. That body may give, withhold, or restrict such jurisdiction at its discretion, provided it be not extended beyond the boundaries fixed by the Constitution. Turner v. Bank of North America, 4 Dall. 8, 10 [1 L. Ed. 718]; United States v. Hudson & Goodwin, 7 Cranch. 32 [3 L. Ed. 259]; Sheldon v. Sill, 8 How. 441, 448 [12 L. Ed. 1147]; Stevenson v. Fain, 195 U. S. 165 [25 S. Ct. 6, 49 L. Ed. 142]. The Constitution simply gives to the inferior courts the capacity to take jurisdiction in the enumerated cases, but it requires an act of Congress to confer it."

The inherent power existing in the District Court of the United States for the Northern District of Oklahoma to protect by injunction *its own jurisdiction and its own judgments* cannot properly be exercised to protect the jurisdiction and judgment of another court. Such a claim is not even advanced. Inasmuch as the facts stated in the bill did not show that the judgment for which protection was asked was a judgment of the court from which protection was sought, it follows that the bill did not set up a cause of action in equity, and for that reason was properly dismissed.

As this view disposes of the appeal, it is unnecessary to consider other questions raised by counsel.

Decree affirmed.