John FACTOR, Plaintiff,

v.

PENNINGTON PRESS, INC., an Ohio corporation, et al., Defendants.

No. 59 C 1961.

United States District Court
N. D. Illinois, E. D.

Dec. 30, 1963.

Frank J. McGarr, Chicago, Ill., for plaintiff.

Julius S. Cordell, Bernard H. Sokol, Charles J. Barnhill, Narcisse A. Brown and Wm. F. McNally, Howard P. Robinson and George W. McBurney, Sidley, Austin, Burgess & Smith, John Edward Dwork, Chicago, Ill., for defendants.

DECKER, District Judge.

This is a lawsuit by John Factor (also called "Jake the Barber," which I mention only because the defendants keep referring to Mr. Factor both in the documents in this lawsuit and in the book, which is the subject matter of this litigation, by that alias) against the publisher, Pennington Press, the printer, American Lithograph Co., four book stores and two authors, Roger Touhy and Ray Brennan.

The suit charges libel of Factor by publication of a book entitled, "The Stolen Years," in which Roger Touhy through Ray Brennan related his version of how he came to be convicted and incarcerated for some 25 to 30 years for the kidnapping of John Factor. Suffice it to say at this point that Touhy claims that John Factor lied in order to ingratiate himself with the Federal and state authorities so that he would be spared prosecution for various types of mail fraud. In the course of the book Touhy repeatedly refers to John Factor as a "swindler," a "liar" and by a variety of other unsavory characterizations.

Each of the defendants moves to dismiss the complaint on the ground that this Court lacks jurisdiction over the subject matter in that the *"alienage jurisdiction"* of this Court is improperly invoked. The complaint alleges, insofar as it is material to the determination of this motion, that John Factor is a citizen of the United Kingdom by reason of (and *only* by reason of) his being born in Hull, England. It appears that Mr. Factor has at various times asserted his birthplace to be other than at Hull, England, whenever it suited his convenience so to do. For example, in 1912, in a sworn application to the Illinois Barbers State Board of Examiners, he stated that his birthplace was in Russia. Also, in 1917, when he took out his first naturalization papers (and prior to the filing of this lawsuit, he had never completed the naturalization process by taking out his second papers), he swore that his birthplace was Russia. Again, when applying for his marriage license in New York City, he swore that his birthplace was Chicago, Illinois; and again, on November 16, 1913, when a birth certificate for his son, John, was filled out, it showed the birthplace of his father, John Factor, to be Russia.

Citing these various places of birth used from time to time by the plaintiff in this case, the defendants argue that Factor is not to be believed today when he alleges in his complaint that he was born in Hull, England.

Further, the defendants rely on three orders of the United States District Court for the Northern District of Illinois, Eastern Division, which were entered more than thirty years ago in a lawsuit in which "J. Factor" was a party defendant. This litigation involved a suit for civil fraud by some 800 British citizens and subjects against Factor and others (Arthur Traviss Faber, et al., v. Foreman State Trust and Savings Bank, et al., No. 10538):

(1) On October 1, 1931, Factor's motion to dismiss the complaint on the ground, *inter alia*, that alienage jurisdiction was lacking since both he, by virtue of his birth in Hull, England, and the plaintiffs were citizens and subjects of Great Britain, was denied, without opinion or findings, by Judge Wilkerson.

(2) On March 5, 1932, Factor's motion for a rehearing of the denial of his motion to dismiss, under the old Equity Rule 69, was denied by Judge Woodward. This latter order was accompanied by a

fourteen page opinion in which Judge Woodward indulged in speculation as to what the grounds for Judge Wilkerson's order "must necessarily" have been. Judge Woodward clearly limited the scope of his opinion by stating:

"The sole question here involved is the right to a rehearing under Equity Rule 69. Whether the defendant, John Factor, may in another pleading again challenge the jurisdiction of the court is not involved and is not passed upon." (The Woodward Opinion, p. 6.)

Nevertheless, the defendants rely on dicta in Judge Woodward's opinion and argue that:

"In entering this order Judge Wilkerson necessarily must have concluded that from all the facts and circumstances then in evidence before him, that the defendant, John Factor, was not born in Hull, England, or at least that he was not an alien, but a citizen of the United States."

(3) On September 29, 1932, Judge Wilkerson entered a consent decree accompanied by findings of fact and conclusions of law which included the following:

"John Factor * * * [and others] * * * were at the time of the institution of the above entitled cause and now are citizens and residents of the State of Illinois and of the Northern District of Illinois." (Findings of Fact and Conclusions of Law with Reference to Decree, p. 8–9.)

The issue now before the Court is whether, as defendants contend, these three orders establish uncontrovertibly that Factor cannot sustain his burden of proving his allegation that the diversity jurisdiction of this Court is properly invoked. Must these three orders be given *res judicata* effect over the issue of Factor's citizenship in this case under the doctrine of the bar of collateral estoppel, and consequently bar relitigation of that issue now?

The statute in question is 28 U.S.C. § 1332, which provides for diversity jurisdiction of District Courts. It provides:

"(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between—

"(1) citizens of different States;

"(2) citizens of a State and foreign states or citizens or subjects thereof; and

"(3) citizens of different States and in which foreign states or citizens or subjects thereof are additional parties."

In order to establish this Court's jurisdiction, since Factor alleges he is a citizen of the United Kingdom, this case would have to fall within subdivision (2); in other words, it would have to be a suit between citizens of a state (all of the defendants are citizens of the State of Illinois) and citizens or subjects of a foreign state (Factor would have to establish that he was a citizen or subject of the United Kingdom).

Before getting to the heart of the matter, it is best to dispose of collateral issues which, by reason of events occurring subsequent to the filing of this lawsuit, have tended to complicate this case.

■ First, on July 15, 1963, John Factor became a citizen of the United States by order of the Court for the Southern District of California, Central Division, *In the matter of the Petition of John Factor to be admitted a citizen of the United States of America,* No. 217599. Certain findings of fact and conclusions of law and a recommendation of the designated naturalization examiner were adopted by District Court Judge Leon R. Yankwich, and entered as his findings of fact and conclusions of law when he admitted Factor to United States citizenship. It is clear that this Court may take judicial notice of the proceedings in the California Court.

Wagner v. Fawcett Publications, 307 F. 2d 409, 411 (7 Cir. 1962).

■ Factor argues first that because of his residence in California that even if he had not technically been given United States citizenship before this suit was instituted, he would satisfy the diversity requirements by being a resident of California. But in order to be a citizen of a state, it is elementary law that one must first be a citizen of the United States. See the 14th Amendment to the United States Constitution and the following cases so construing it: Colgate v. Harvey, 296 U.S. 404, 427, 56 S.Ct. 252, 80 L.Ed. 299 (1935); Cuozzo v. Italian Line, etc., 168 F.Supp. 304, 305 (D.C. S.D.N.Y.1958).

■■ Moreover, the fact of Factor's acquiring United States citizenship some 3½ years after this lawsuit was filed can have no effect either to oust this Court of jurisdiction or to give it jurisdiction, because diversity of citizenship jurisdiction (as Factor's attorneys admit in their last brief) depends upon the status of the parties at the commencement of the suit and is not affected by subsequent events. See, among others, Mullen v. Torrance, 22 U.S. [536] 537, 6 L.Ed. 154 (1824); Conolly v. Taylor, 27 U.S. [555] 556, 563, 7 L.Ed. 518 (1829); Koenigsberger v. Richmond Silver Min. Co., 158 U.S. 41, 15 S.Ct. 751, 39 L.Ed. 889 (1895); Irwin v. Missouri Valley Bridge & Iron Co., 19 F.2d 300 (7 Cir. 1927); Boesenberg v. Chicago Title & Trust Co., 128 F.2d 245, 141 A.L.R. 565 (7 Cir. 1942); and Smith v. Sperling, 354 U.S. 91, 77 S.Ct. 1112, 1 L.Ed.2d 1205 (1957).

Second, plaintiff argues that if Factor was not born in Hull, England, he was born in Russia, and that makes him a citizen of a foreign state. Factor contends that he was born in Hull, England, while his mother and father were sojourning there on a trip from their native Russia. Shortly after his birth, they returned to Russia. However, as the defendants point out, even if Factor was born in Russia and left it for the United States prior to the Revolution in 1917, a statute passed by Russia on May 27, 1933, bars Factor from claiming Russian citizenship. (30 Am. Journal of International Law, 614, 617.) Hence, if Factor did acquire Russian citizenship and left before the Revolution, he would be a stateless person, and there have been cases which have held that a stateless person cannot qualify as a citizen of a foreign state in order to satisfy the diversity of citizenship requirements of 28 U.S.C. § 1332. See Klausner v. Levy, 83 F.Supp. 599 (D.C.E.D.Va.1949), in which it was held that a person living in Palestine, which prior to March, 1948, was not a state but a British mandate territory, could not satisfy the requirement of being a citizen or subject of a foreign state. See also, Blair Holdings Corporation v. Rubinstein, 133 F.Supp. 496 (D.C.S.D.N.Y.1955).

Thus it is that Factor either has to be held to be a citizen or subject of the United Kingdom by reason of being born in Hull, England, or this case will have to be dismissed for want of jurisdiction over the subject matter.

Defendants make a very compelling argument and cite numerous authorities on the subject of collateral estoppel. (However, it is interesting to note that none of the authorities cited by the defendants, and none found by the Court, bear on the precise question whether a party to a prior litigation, who has a jurisdictional fact decided against him, can thirty years later, in subsequent litigation, try to establish that jurisdictional fact again.) Rather peculiarly, defendants' argument of *res judicata* would seem to work against them, as well as for them. The reason for this is that on July 15, 1963, another District Court of equal importance as the United States District Court for the Northern District of Illinois made another factual and legal determination and found (on the basis of his testimony under oath that he was born in Hull, England, October 8, 1892) that John Factor was an alien from the time of his application for citizenship, October 21, 1959, until July 15, 1963, when naturalization was or-

dered. For purposes of comparison, I will refer to the language of the opinion some thirty years ago and the language of the Court last July.

As a finding of fact, Judge Wilkerson held, *inter alia,* that John Factor and a group of other defendants in the Faber case "are citizens and residents of the State of Illinois and of the Northern District of Illinois." Judge Woodward, who refused a motion by Factor and the others for a rehearing on the jurisdictional question decided by Judge Wilkerson, held that the evidence adduced by Factor was not sufficient to cause him to reconsider Judge Wilkerson's prior determination that he and the others were citizens and residents of Illinois.

The California Court on July 15, 1963, adopted as a finding of fact that John Factor, "a 70-year-old male, native and national of England * * * was born on October 8, 1892, at Hull, England, and entered the United States on December 3, 1930, for permanent residence, and has lived here ever since."

Plaintiff contends in his final brief that the District Court of California was aware of the defendants' contentions here that Factor had at one time been determined to have been a citizen and resident of Illinois. Nevertheless and notwithstanding this knowledge, the Court found that Factor was an alien by reason of his birth in Hull, England.

Whether or not the District Court knew of Judge Woodward's and Judge Wilkerson's prior rulings, its determination of Factor's citizenship should be entitled to at least as much weight as those of the earlier and now deceased jurists. Both courts are *nisi prius* or trial courts at the same level of the Federal system, and both speak with the same authority. Furthermore, Judge Woodward, as indicated in the quote above from page 6 of his opinion, expressly disavowed any intention of ruling with finality on Factor's contention that he was a citizen of Hull, England.

Therefore, when the issue is reduced to its essentials, despite all of the impressive authority the defendants present in support of their *res judicata* and collateral estoppel arguments, there is a finding in 1932 by one District Court that Factor was a citizen of Illinois and a finding in 1963 by another District Court that Factor was a native and citizen of Hull, England.

█ Pertinent Illinois decisions on the doctrine of *res judicata* and the bar of collateral estoppel indicate that a party will be foreclosed from litigating an issue only when *all* three of the following requirements are satisfied:

(1) The issue decided in the prior litigation must have been *identical* with the issue at bar.

(2) The prior determination must involve a *final judgment* on the merits of the issue.

(3) The party *against whom* the prior determination is asserted to be *res judicata* must have been a party, or in privity with a party, to the prior adjudication so that he had full opportunity to litigate the issue at least once. (However, there is no requirement of "mutuality of privity": the party *who asserts* the prior determination as *res judicata* does not need to have been a party, or in privity with a party, to the prior adjudication.)

See, Tezak v. Cooper, 24 Ill.App.2d 356, 164 N.E.2d 493·(1960); Bentley v. Teton, 19 Ill.App.2d 284, 153 N.E.2d 495 (1958); Rose v. Dolejs, 7 Ill.App.2d 267, 129 N.E.2d 281 (1955); Crow v. Bowlby, 68 Ill. 23 (1873); Sweeting v. Campbell, 2 Ill.2d 491, 119 N.E.2d 237 (1954); Crockett v. Harrison, 26 Ill.App.2d 9, 167 N.E.2d 428 (1960); McVeigh v. McGurren, 117 F.2d 672 (7 Cir. 1940); Stangle v. Chicago, Rock Island & Pac. R. R. Co., 295 F.2d 789 (7 Cir. 1961); Bernhard v. Bank of America Nat. Trust & Sav. Ass'n., 19 Cal.2d 807, 122 P.2d 892 (1942); Gammel v. Ernst & Ernst, 245 Minn. 249, 72 N.W.2d 364, 54 A.L.R. 2d 316 (1955); Connelly v. Balkwill, 174 F.Supp. 49 (D.C.N.D.Ohio 1959); Coca-Cola Co. v. Pepsi-Cola Co., 6 W.W.Harr. 124, 172 A. 260 (Del.Super.Ct.1934).

Here, therefore, neither the order of the Northern District of Illinois nor the order of the Southern District of California is entitled to *res judicata* effect:

■■ (1) While the identical issues are involved, and Factor is the identical party against whom the prior determination is asserted as a bar, there was no final judgment on the merits of the issue thirty years ago. Judge Wilkerson's order denying the motion to dismiss and his finding that Factor was then a citizen and resident of Illinois do not specifically find that Factor was not born in Hull, England. The only language to that effect appears in Judge Woodward's opinion denying Factor's motion for a rehearing under Equity Rule 69, which cannot be considered a final judgment on the merits of the issue.

(2) Judge Yankwich's order and findings, while a final judgment on the merits of the identical issue, were not made in a proceeding in which the party against whom they are sought to be asserted was a party or in privity with a party; none of the defendants here had a chance to litigate the issue in California.

■ However, that does not mean that the Court is precluded from considering the prior proceedings. In Wagner v. Fawcett Publications, supra, the Seventh Circuit held that on a petition for rehearing it could properly take judicial notice of certain proceedings in the Criminal Court of Cook County. The issue in the case, a lawsuit under Illinois law for invasion of privacy, was whether the defendant had established the defense of privilege for reporting a "newsworthy" event. On the first hearing of the case the Seventh Circuit understood the facts to prove that the death of plaintiff's deceased had occurred so long before the publication that it had ceased to be a newsworthy event. On rehearing, after taking judicial notice of the Criminal Court proceedings, the Court considered the additional facts to prove that at the time of the publication, plaintiff was a witness for the prosecution, and, consequently, that at the time of publication

a report of the murder of plaintiff's deceased was a newsworthy event.

Comparing the 1932 finding with the 1963 finding, I think that the latter is more pertinent to the issue of diversity or alienage jurisdiction in the case at bar. First, Judge Yankwich has considered the question of Factor's birth just this past summer, while the evidence considered by Judges Wilkerson and Woodward was over thirty years ago. But difference in the freshness of the two considerations is not the sole criterion. Neither Judge Wilkerson nor Judge Woodward found where Factor was in fact born, and one can only surmise by way of inference that Judge Wilkerson "must have" reasoned that Factor was not born in Hull, England, in order to find that he was a citizen and resident of the Northern District of Illinois. However, other inferences are equally plausible to explain why Judge Wilkerson sustained diversity of citizenship in 1932: he may have, for example, believed that Factor completed naturalization after taking out papers in 1917 and living continuously in Chicago, Illinois, until 1932. But whatever Judge Wilkerson's reasoning, it was unexpressed and remains a matter of conjecture today, thirty years after the fact. Judge Yankwich, on the other hand, clearly adopted as a finding of fact that Factor was born in Hull, England, October 8, 1892, after having the benefit of considering all of the information about Factor's life which the United States Immigration and Naturalization Service could give him.

■ Under the rule of McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 56 S.Ct. 780, 80 L.Ed. 1135 (1936), the plaintiff in a case based on the diversity jurisdiction of the Federal courts must bear the burden of proof of the essential jurisdictional facts whenever the defendant challenges the court's jurisdiction. (See also, Thomson v. Gaskill, 315 U.S. 442, 62 S.Ct. 673, 86 L.Ed. 951 (1942).) Here, when the Court's jurisdiction was challenged, plaintiff called the Court's attention to the findings of Judge Yankwich. A considera-

tion of those findings leads me to hold that at this stage of the case, at least, the plaintiff has made a sufficient showing that the Court has jurisdiction over the subject matter by reason of the diversity of citizenship, or alienage, of the parties.

Therefore, the motion of the defendants to dismiss the complaint for lack of jurisdiction over the subject matter is denied.