SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**Barbara Orientale v. Darrin L. Jennings** (A-43-17) (079953)

**Argued October 9, 2018 -- Re-Argued April 24, 2019 -- Decided September 23, 2019**

**ALBIN, J., writing for the Court.**

In this case, the Court considers the practices of additur and remittitur. Currently, when a jury's damages award is so grossly excessive that it shocks the judicial conscience, the trial judge may, with the consent of the plaintiff, grant a remittitur -- the highest award that, in the judge's view, could be sustained by the evidence. If the plaintiff accepts the remitted amount, the defendant is bound by that judicial finding, subject to the right to appeal. Likewise, when a jury's damages award is so grossly inadequate that it shocks the judicial conscience, the trial judge may, with the consent of the defendant, grant an additur -- an increased award that, in the judge's view, could be sustained by the evidence. If the defendant accepts the additional amount, the plaintiff is bound by that judicial finding, subject to the right to appeal.

Plaintiff Barbara Orientale brought a personal-injury lawsuit against defendant Darrin Jennings for allegedly setting off an automobile accident that caused her to suffer permanent injuries. The trial court entered partial summary judgment against Jennings, finding that he was at fault for causing the accident. Orientale and Jennings then settled the lawsuit for $100,000, the full amount of liability coverage on Jennings's vehicle.

Orientale maintained an underinsured motorist policy with defendant Allstate New Jersey Insurance Company (Allstate) that provided coverage for damages up to $250,000. Orientale initiated a claim for her personal-injury damages in excess of $100,000 allegedly caused by the accident. Although the jury returned a verdict finding that Orientale suffered a permanent injury, it awarded damages in the amount of only $200. Because the jury award did not exceed Orientale's $100,000 settlement with Jennings, Allstate's underinsured motorist coverage policy was not triggered. Therefore, the judge entered a no-cause-of-action judgment.

Orientale moved for a new damages trial or an additur. The judge vacated the damages award, finding that it constituted a miscarriage of justice, and granted an additur in the amount of $47,500, the lowest award in his estimation that a reasonable jury could have returned in light of the evidence presented at trial. Allstate accepted the additur. Because Orientale's damages did not exceed $100,000, the judge again entered a

1

judgment in favor of Allstate, which the Appellate Division affirmed in an unpublished decision. The Court granted Orientale's petition for certification. 232 N.J. 154 (2018).

**HELD:** The Court brings the use of remittitur and additur in line with basic notions of fair play and equity. When a damages award is deemed a miscarriage of justice requiring the grant of a new trial, then the acceptance of a damages award fixed by the judge must be based on the mutual consent of the parties. Going forward, in those rare instances when a trial judge determines that a damages award is either so grossly excessive or grossly inadequate that the grant of a new damages trial is justified, the judge has the option of setting a remittitur or an additur at an amount that a reasonable jury would award given the evidence in the case. Setting the figure at an amount a reasonable jury would award -- an amount that favors neither side -- is intended to give the competing parties the greatest incentive to reach agreement. If both parties accept the remittitur or additur, then the case is settled; if not, a new trial on damages must proceed before a jury.

1. In the early English common law, additur did not exist, and remittitur did not bear any resemblance to how it is practiced today. In 1822, United States Supreme Court Justice Joseph Story, sitting as a Circuit Justice, upheld a verdict on liability but found the damages award was excessive. Blunt v. Little, 3 Mason 102, 102 (1822). Justice Story noted, "I believe that I go to the very limits of the law," in concluding "that it is reasonable, that the cause should be submitted to another jury, unless the plaintiff is willing to remit $500 of his damages. If he does, the court ought not to interfere farther." Ibid. Justice Story did not seek the defendant's consent to the remittitur. In time, Justice Story's use of remittitur was accepted by the United States Supreme Court. Nonetheless, in a case involving a constitutional challenge to additur, the Court reexamined the validity of the then-accepted practice of remittitur and reasoned that Justice Story's use of remittitur rested on a shaky legal foundation. Dimick v. Schiedt, 293 U.S. 474, 482-86 (1935). In the end, additur was deemed unconstitutional under the Seventh Amendment because it requires the plaintiff "to forego his constitutional right to the verdict of a jury," while remittitur survived, primarily due to its long-standing history in federal jurisprudence. Id. at 484-85, 487-88. (pp. 13-21)

2. As of 1917, both remittitur and additur were accepted practices in New Jersey. Forty years later, the Court addressed a constitutional challenge to additur based on the Dimick decision. See Fisch v. Manger, 24 N.J. 66, 72-73, 80 (1957). The Court explained that the "constitutional right of trial by jury relates to substance rather than form and does not preclude efficient procedural devices," id. at 75, and was "satisfied that the practices of remittitur and additur violate none of our constitutional interdictions" when fairly invoked to resolve a "manifest denial of justice." Id. at 80. Although the doctrines of remittitur and additur have long been a part of our jurisprudence, remittitur in particular has come under increasing scrutiny. The arguments presented in this appeal have compelled the Court to look anew at the fairness of a trial judge granting a remittitur or additur without the mutual assent of the parties. (pp. 21-25)

3.  Remittitur and additur allow just one party the option of avoiding the unnecessary expense and delay of a new trial.  The other party is bound by a judge's setting the quantum of damages and denying a new trial -- subject only to an appeal challenging the trial court's exercise of discretion in granting or setting the remittitur or additur amount.  The heart of the problem is lack of mutual consent to the judge's assessment of the proper quantum of damages.  Because both parties are not required to accept the remittitur or additur, a new trial can be denied without the mutual consent of the parties.  Under New Jersey's court rules, however, both parties generally have the right to demand and receive a jury trial on damages.  See R. 4:35-1(a), (d).  A party entitled to a new damages trial because of a grossly excessive or inadequate damages award should be in no different position.  The Court now holds that in the unusual case where a damages award was grossly excessive or grossly inadequate, the trial court retains the power to declare that a jury's damages award shocks the conscience and to grant a new trial or offer the parties a remittitur or an additur.  Going forward, however, unless both parties consent to a remittitur or an additur, the court must grant a new trial.  The Court modifies additur and remittitur based on its authority over the common law and practices and procedures of the courts; it does not address the constitutional right-to-jury-trial argument.  (pp. 25-29)

4.  Under this new scheme, a remittitur and an additur are essentially settlement figures suggested by the trial court.  This settlement scheme will not work effectively if the court sets the figure at the highest or lowest damages award that could be sustained by the evidence.  In setting the remittitur or additur, the court should not accord any deference to a damages award that shocks the judicial conscience.  Instead, the court must attempt the difficult task of determining the amount that a reasonable jury, properly instructed, would have awarded.  Even if the parties do not consent to the remittitur or additur, the court's evaluation of the damages may spur the parties to reach a settlement on their own terms.  In any event, when a trial court declares that a damages award is so grossly excessive or inadequate that it shocks the judicial conscience, the parties are entitled to a new trial, unless the court offers a remittitur or additur that the parties mutually accept.  Although the party objecting to the court's grant of a new trial may appeal that decision, no appeal may be filed from the court's setting of the remittitur or additur amount.  The parties have the power simply to reject the amount fixed by the court.  (pp. 30-32)

5.  Because the trial court in this case declared that the damages award was so grossly inadequate that it shocked the judicial conscience and because Orientale did not consent to the court's additur, Orientale is entitled to a new trial on damages.  (p. 32)

**The matter is REMANDED for further proceedings.**

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE ALBIN's opinion.**

3

# SUPREME COURT OF NEW JERSEY
## A-43 September Term 2017
### 079953

Barbara Orientale,

Plaintiff-Appellant,

and

Michael Orientale,

Plaintiff,

v.

Darrin L. Jennings,

Defendant,

and

Allstate New Jersey
Insurance Company,

Defendant-Respondent.

On certification to the Superior Court,
Appellate Division.

| Argued | Re-Argued | Decided |
| --- | --- | --- |
| October 9, 2018 | April 24, 2019 | September 23, 2019 |

Christina Vassiliou Harvey argued the cause for appellant
(Lomurro, Munson, Comer, Brown & Schottland,

attorneys; Christina Vassiliou Harvey, on the briefs, and Jonathan H. Lomurro, of counsel and on the briefs).

Frederic J. Regenye argued the cause for respondent (Law Office of Kenneth N. Lipstein, attorneys; Frederic J. Regenye, on the briefs).

Amos Gern argued the cause for amicus curiae New Jersey Association for Justice (Starr, Gern, Davison & Rubin, attorneys; Amos Gern, of counsel and on the briefs, and Ana Rita Ferreira, on the briefs).

William S. Bloom argued the cause for amicus curiae New Jersey Defense Association (Methfessel & Werbel, attorneys; William S. Bloom and Leslie A. Koch, of counsel and on the brief, and Natale Donis and James V. Mazewski, on the brief).

David R. Kott argued the cause for amicus curiae New Jersey Business & Industry Association (McCarter & English, attorneys; David R. Kott, Edward J. Fanning, and Amanda M. Munsie, of counsel and on the brief).

Emily A. Kaller argued the cause for amicus curiae Trial Attorneys of New Jersey (Greenbaum, Rowe, Smith & Davis and Trial Attorneys of New Jersey, attorneys; Emily A. Kaller and Michael Ricciardulli, on the brief).

Thomas J. Manzo argued the cause for amicus curiae New Jersey State Bar Association (New Jersey State Bar Association, attorneys; John E. Keefe, Jr., President, of counsel and on the brief, and Thomas J. Manzo, Craig J. Hubert, William H. Mergner, Jr., and Brandon C. Simmons, on the brief).

JUSTICE ALBIN delivered the opinion of the Court.

2

Under our common law jurisprudence, when a jury's damages award is so grossly excessive that it shocks the judicial conscience, the trial judge may, with the consent of the plaintiff, grant a remittitur -- the highest award that, in the judge's view, could be sustained by the evidence. If the plaintiff accepts the remitted amount, the defendant is bound by that judicial finding, subject to the right to appeal. Likewise, when a jury's damages award is so grossly inadequate that it shocks the judicial conscience, the trial judge may, with the consent of the defendant, grant an additur -- an increased award that, in the judge's view, could be sustained by the evidence. If the defendant accepts the additional amount, the plaintiff is bound by that judicial finding, subject to the right to appeal.

The practice of judges setting damages awards through remittitur and additur -- without the consent of both parties -- has been well established for a long period in this State. That practice, however, was not recognized in the early common law. In the early common law, remittitur did not allow for the reduction of a jury's damages award as permitted today, and additur did not exist.

In the appeal before us, plaintiff has challenged the constitutionality of additur on the basis that the judge acts as a "super jury" in setting a damages award in violation of the right to a jury trial. We take this occasion to

reexamine, with the assistance of many stakeholders in the bar and bench, the current practices of both additur and remittitur.

Plaintiff and a number of amici curiae argue that the current practices of remittitur and additur are in tension with the constitutional right to trial by jury. We need not address the constitutional issue before us, however. Instead, we choose to exercise our superintendence over the common law and our constitutional authority over the practices and procedures of our courts to bring the use of remittitur and additur in line with basic notions of fair play and equity. We hold that when a damages award is deemed a miscarriage of justice requiring the grant of a new trial, then the acceptance of a damages award fixed by the judge must be based on the mutual consent of the parties.

Going forward, in those rare instances when a trial judge determines that a damages award is either so grossly excessive or grossly inadequate that the grant of a new damages trial is justified, the judge has the option of setting a remittitur or an additur at an amount that a reasonable jury would award given the evidence in the case. Setting the figure at an amount a reasonable jury would award -- an amount that favors neither side -- is intended to give the competing parties the greatest incentive to reach agreement. If both parties accept the remittitur or additur, then the case is settled; if not, a new trial on damages must proceed before a jury.

4

We now turn to the facts of this case and the jurisprudence that has led us to our conclusion.

## I.

### A.

Plaintiff Barbara Orientale brought a personal-injury lawsuit against defendant Darrin Jennings for allegedly setting off a chain-reaction automobile accident that caused her to suffer permanent injuries. While stopped in traffic, Orientale's car was struck from behind and propelled into the vehicle in front of it. The trial court entered partial summary judgment against Jennings, finding that he was at fault for causing the accident. Orientale and Jennings then settled the lawsuit for $100,000, the full amount of liability coverage insuring Jennings's vehicle.

Orientale maintained an underinsured motorist policy with her insurer, defendant Allstate New Jersey Insurance Company (Allstate), that provided coverage for damages up to $250,000.[1] Orientale initiated a claim against Allstate for her personal-injury damages in excess of $100,000 allegedly

---

[1] Underinsured motorist coverage provides coverage to the policyholder if she suffers personal injury or property damage caused by a motorist's negligent operation of a vehicle and the negligent motorist's liability insurance is insufficient to reimburse the policyholder's damages. N.J.S.A. 17:28-1.1(e)(1); see also French v. N.J. Sch. Bd. Ass'n Ins. Grp., 149 N.J. 478, 482 (1997).

caused by the accident. That matter proceeded to a jury trial on damages. The jury knew nothing about the earlier settlement.

Orientale testified that despite undergoing surgery on both her shoulders and receiving nerve-block injections and physical therapy, she remained in constant pain, suffered limitations in her physical movements, had difficulty sleeping, and struggled to perform routine household chores. Although the jury returned a verdict finding that Orientale suffered a permanent injury, it awarded damages in the amount of only $200.

Because the jury award did not exceed Orientale's $100,000 settlement with Jennings, Allstate's underinsured motorist coverage policy was not triggered. Therefore, the judge entered a no-cause-of-action judgment.

Based on the alleged inadequacy of the damages award, Orientale moved for a new damages trial or, in the alternative, an additur. The trial judge vacated the damages award, finding that it constituted a miscarriage of justice. The judge granted an additur in the amount of $47,500, the lowest award in his estimation that a reasonable jury could have returned in light of the evidence presented at trial.

Under the governing case law, only Allstate had the option of accepting the additur or rejecting it and proceeding to a new damages trial. Allstate accepted the additur. Orientale's underinsured motorist coverage came into

6

play only if her damages exceeded the $100,000 she had already received from Jennings.  In light of Allstate's decision, the judge again entered a no-cause-of-action judgment in favor of Allstate.

B.

In an unpublished per curiam opinion, the Appellate Division affirmed the trial court's judgment.  It reasoned that additur and remittitur present "mirror images" of remedies designed to correct a damages award constituting a manifest injustice.  Because, when applying remittitur, an excessive award should be remitted to the highest amount supported by the evidence, citing Fertile ex rel. Fertile v. St. Michael's Med. Ctr., 169 N.J. 481, 500 (2001), the Appellate Division reasoned a similar approach should apply to additur -- the inadequate award should be raised to the lowest amount supported by the evidence.  It rejected Orientale's argument that the trial court should have "determin[ed] the amount that a reasonable jury, properly instructed, would have awarded," quoting Tronolone v. Palmer, 224 N.J. Super. 92, 103 (App. Div. 1988).  In determining that the additur award did "not shock the judicial conscience," the Appellate Division stated that the trial judge not only expressed a "familiarity with the record and 'feel of the case,'" but also noted that the jury "found credible [Orientale's] proofs regarding permanency" but

7

less credible her proofs regarding damages. Accordingly, the Appellate Division did not vacate the additur award.

C.

We granted Orientale's petition for certification. 232 N.J. 154 (2018). We also granted the motion of the New Jersey Association for Justice (NJAJ) to participate as amicus curiae.

II.

A.

1.

Orientale argues that "additur is constitutionally infirm because it requires the judge to be a super jury in awarding [damages] after the jury's verdict shocked the judicial conscience." Orientale maintains that if an additur is permissible, the trial court erred in fixing the damages award at the lowest amount that a reasonable jury could have awarded, citing Tronolone, 224 N.J. Super. at 103-04. She asserts that the court had no basis either to assume that the jury discounted the credibility of some of her witnesses or, given her success in proving liability, to construe the evidence against her. Orientale therefore requests a new jury trial on damages.

2.

Amicus NJAJ encourages this Court to reexamine the constitutionality of additur because it essentially delegates factfindings to the trial judge. NJAJ recommends that, in considering an additur, courts should (1) give the plaintiff "the option of either accepting the additur amount or opting for a new trial on damages"; (2) forgo resolving "factual disputes in favor of one party or the other"; (3) avoid crediting the jury's factfindings when the damages award is "shockingly" low; and (4) "fix a reasonable amount, not the highest or lowest amount possible supported by the trial record."

B.

Allstate urges this Court to affirm the Appellate Division's approach to additur and to uphold the trial court's additur judgment of $47,500. Allstate stresses that this Court recognized in Cuevas v. Wentworth Group, 226 N.J. 480 (2016), "that there is no constitutional infirmity regarding a trial court redressing a defective jury verdict" and that the trial court's intervention in setting a remittitur or additur "protects the interests of all the parties by ensuring that a fair and appropriate award is entered." It contends that this Court's precedents have implicitly rejected the suggestion in Tronolone that additur and remittitur should be determined based on "the amount that a reasonable jury, properly instructed, would have awarded," quoting 224 N.J.

Super. at 103-04. Allstate maintains that because the trial court made detailed findings grounded in the record in setting the lowest award sustainable by the evidence, the court's findings should not be disturbed.

## III.

## A.

After oral argument, we determined that any reexamination of whether additur intrudes on the exclusive factfinding prerogative of the jury in our civil justice system must encompass a likeminded reevaluation of remittitur. Because no challenge to the validity of remittitur was before the Court, we invited the parties, as well as a wide array of amici curiae and the Conference of Civil Presiding Judges to respond to four discrete questions concerning additur and remittitur:

> 1. Should both parties have the right to object to a trial court's additur, or should only the defendant have that right?
>
> 2. Should both parties have the right to object to a trial court's remittitur, or should only the plaintiff have that right?
>
> 3. In additur, should the court set the damages amount as the lowest amount reasonably supported by the record, or a reasonable amount supported by the record?
>
> 4. In remittitur, should the court set the damages amount as the highest amount reasonably supported by

10

the record, or a reasonable amount supported by the record?[2]

B.

In addition to answering the four questions, a number of responses independently address the constitutionality of remittitur and additur. Some contend that both violate the constitutional right to trial by jury by permitting judicial factfinding in an area reserved exclusively for the jury. Others advocate that only additur violates that right to a jury trial. In contrast, several maintain that neither remittitur nor additur run afoul of any constitutional mandate and that no satisfactory rationale justifies departing from practices embedded in our case law for over a century.

The parties' and amici's responses to the four questions run the gamut. Some argue that when a damages award is either grossly excessive or inadequate, a court should not grant a remittitur or an additur unless both the plaintiff and the defendant consent and, in the absence of mutual consent, the court should order a new trial. Others contend that the mutual consent of the

---

[2]  The following organizations participated as amici curiae, filing briefs addressing the above questions:  the NJAJ; the New Jersey State Bar Association; the New Jersey Defense Association; the Trial Attorneys of New Jersey; the New Jersey Business and Industry Association; the New Jersey Civil Justice Institute; the Association for Governmental Responsibility, Ethics, and Transparency; and the National Employment Lawyers Association of New Jersey.

parties should apply only in additur cases. A number, however, urge that we not disturb the current law governing remittitur and additur.

Additionally, differing arguments are advanced concerning how a court should set the amount of a remittitur or an additur. Some consider remittitur and additur mirror images of each other and therefore advocate that, under our current jurisprudence, a remittitur should be set at the highest amount and an additur at the lowest amount reasonably supported by the evidence. Agreeing with the mirror-image approach, others suggest that a remittitur or an additur should be fixed not at the highest or lowest amount but at an amount a reasonable jury would return. Plaintiff, however, insists that an additur should be set at the highest award sustainable by the record, and one amicus recommends that only an additur -- not a remittitur -- be set at a reasonable amount.

Last, the Conference of Civil Presiding Judges recommends that "both parties ought to have the right to object to a trial court's additur or remittitur." In the Conference's view, "if a trial judge finds that there has been a miscarriage of justice created by the jury award, the trial judge ought to set the number for additur or remittitur only at the point which would cure the miscarriage of justice" -- not at a "reasonable amount."

With that diversity of opinion as a backdrop, we now review the historical development of the doctrines of remittitur and additur. We first look to whether the early common law allowed a trial judge to grant a remittitur or an additur with the consent of just one party.

IV.

A.

In the early English common law, additur did not exist,[3] and remittitur did not bear any resemblance to how it is practiced today in our jurisprudence. Although in rare circumstances a judge had the authority to vacate a jury's award of damages and grant a new trial, he could not command that, in its place, the parties accept a judicially imposed award.

In eighteenth-century England, courts had the power to grant a new trial in an action for personal tort when the jury's damages award was "monstrous and enormous indeed, and such as all mankind must be ready to exclaim against, at first blush." Beardmore v. Carrington (1764) 95 Eng. Rep. 790, 792-93 (K.B.) (acknowledging the "great difference between cases of damages which be certainly seen, and . . . where the damages are a matter of opinion,

---

[3] "[T]he established practice and the rule of the common law, as it existed in England at the time of the adoption of the Constitution, forbade the court to increase the amount of damages awarded by a jury. . . ." Dimick v. Schiedt, 293 U.S. 474, 482 (1935).

13

speculation, [or] ideal"); see also Joseph B. Kadane, Mr. Justice Story Invents

American Remittiturs: "The Very Limits of the Law," 3 Brit. J. Am. Legal

Stud. 313, 318-19 (2014). In such instances, however, the only available

remedy was to send the case to a new jury; the judge could not substitute the

jury's award with his own assessment of damages. See Kadane, 3 Brit. J. Am.

Legal Stud. at 319-20. Although judges were empowered to "grant a new trial

if the damages appear to be excessive," see Eyre v. Bank of Eng. (1819) 4 Eng.

Rep. 213, 219 (H.L.), the use of "remittitur" to correct errors in a damages

award was only permissible in three limited circumstances -- none of which

resemble our modern formulation of remittitur.

First, remittitur was a procedural device used to reduce the jury's award

to the amount the plaintiff sought in the complaint -- under the theory that the

plaintiff should not receive more than he demanded. Suja A. Thomas, Re-

Examining the Constitutionality of Remittitur Under the Seventh Amendment,

64 Ohio St. L.J. 731, 764-65 (2003). In Pickwood v. Wright, for example, the

plaintiff sought in his complaint damages in the amount of £600, but the jury

awarded him £611 in damages. (1791) 126 Eng. Rep. 367, 367 (C.P.). When

the defendant brought a writ of error claiming the judgment exceeded the

requested amount, the Court of Common Pleas permitted a remittitur in the

amount of £11. Ibid.

14

Second, a plaintiff could use remittitur "to correct an insubstantial mistake regarding the damages" specified in the plaintiff's complaint. Thomas, 64 Ohio St. L.J. at 766. For example, in Duppa v. Mayo, the plaintiff won a judgment for unpaid rent for a period of thirty-seven years. (1671) 85 Eng. Rep. 366, 368-69 (K.B.). Afterwards, the plaintiff recognized that he had erred in calculating damages and was owed rent for only thirty-six-and-three-fourths years. Id. at 369. To avoid an abatement of his entire claim, the plaintiff consented to the removal of the excess damages. Id. at 369, 371-72; see also Incledon v. Crips (1702) 91 Eng. Rep. 560, 560 (K.B.) (concluding in a contract action that "if more be demanded than is due, it may be remitted").

Third, a plaintiff who secured a verdict on multiple counts in a complaint, one of which was later deemed invalid, could remit damages to reflect only the valid counts to avoid reversal of the entire judgment. Thomas, 64 Ohio St. L.J. at 767; see, e.g., Flemming v. Parker (1722) 88 Eng. Rep. 85, 85 (K.B.).

Other than the uses of remittitur outlined here, there was evidently "no recorded instance of any exercise of power by the Courts to increase or abridge the damages assessed by a jury upon verdict or writ of inquiry" from 1729 through 1819. See Eyre, 4 Eng. Rep. at 219; see also Thomas, 64 Ohio St. L.J. at 770. In short, under the English common law, to remedy an excessive jury

15

verdict, a judge could not "sit as a second jury to fix the damages at a lesser sum" but could grant only "a new trial by another jury."  Kadane, 3 Brit. J. Am. Legal Stud. at 323.

According to a nineteenth-century learned treatise, judges could not "alter the assessment of [uncertain] damages by their own independent authority" but could "suggest to counsel to agree on a sum, to prevent the necessity of a new trial."  John D. Mayne, A Treatise on the Law of Damages: Comprising Their Measure, the Mode in Which They Are Assessed and Reviewed, the Practice of Granting New Trials, the Law of Set-Off, and Compensation Under the Land Clauses Act, 303-04, 310 (Phila., T. & J. W. Johnson & Co. 1856).  Thus, "[i]n the absence of agreement [between the parties, judges had] no power to reduce the damages to a reasonable sum instead of ordering a new trial."  Mayne's Treatise on Damages, 589-90 (10th ed. 1927).

In 1776, New Jersey's first Constitution declared "that the inestimable right of trial by jury shall remain confirmed, as a part of the law of this colony, without repeal for ever," and kept mostly intact "the common law of England."  N.J. Const. of 1776 art. XXII.[4]  Further, in 1791, the then-ratified Seventh

_____

[4] New Jersey's 1844 and 1947 Constitutions both reaffirmed that "[t]he right of trial by jury shall remain inviolate."  N.J. Const. of 1844 art. I, ¶ 7; N.J. Const. art. I, ¶ 9.

Amendment to the United States Constitution provided that "[i]n Suits at common law . . . , the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law," U.S. Const. amend. VII.[5] During that period, "state and federal courts adhered to the English common law rule regarding new trials for excessive damages." Thomas, 64 Ohio St. L.J. at 782-83. No state or federal court case mentioned that a judge had the option to reduce a damages award returned by a jury or "grant[] a new trial for excessiveness in a case of uncertain damages." Id. at 783-84.

### B.

Remittitur in its present form -- and the break with the English common law tradition -- is often credited to a seemingly unremarkable case. See Kadane, 3 Brit. J. Am. Legal Stud. at 313-14; Thomas, 64 Ohio St. L.J. at 731-32. In 1822, United States Supreme Court Justice Joseph Story sat as a Circuit Justice in Blunt v. Little, in which a jury rendered a judgment in favor of the plaintiff, who claimed he was maliciously arrested by the defendant. 3 Mason

---

[5] The Seventh Amendment to the United States Constitution is "not incorporated into the Fourteenth Amendment and is therefore not applicable to the states." In re Application of LiVolsi, 85 N.J. 576, 587 n.7 (1981) (citing Minneapolis & St. Louis R.R. Co. v. Bombolis, 241 U.S. 211 (1916); Fisch v. Manger, 24 N.J. 66, 74-75 (1957)).

102, 102 (1822). Justice Story upheld the verdict on liability but found that the $2000 damages award was excessive. Ibid. He acknowledged his authority to "grant a new trial for excessive damages" and then expressed his personal belief that the damages should have been lower. Ibid. Justice Story explained:

> It appeared to me at the trial, a strong case for damages; at the same time, I should have been better satisfied, if the damages had been made moderate. I have the greatest hesitation in interfering with the verdict, and in so doing, I believe that I go to the very limits of the law. After full reflection, I am of opinion, that it is reasonable, that the cause should be submitted to another jury, unless the plaintiff is willing to remit $500 of his damages. If he does, the court ought not to interfere farther.
>
> [Ibid. (emphases added).]

Justice Story did not seek the defendant's consent to the remittitur. The plaintiff agreed to the remitted damages, and therefore the defendant's application for a new trial was denied. Ibid.

At no point did Justice Story reference either the Seventh Amendment, which states that "no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law," U.S. Const. amend. VII, or English or American common law to support his factfinding under the doctrine of remittitur. See ibid. As Justice Story candidly admitted, "I believe that I go to the very limits of the law." Ibid.

18

In time, Justice Story's use of remittitur in <u>Blunt</u> was accepted by the United States Supreme Court and "uniformly applied by the lower federal courts." <u>Dimick v. Schiedt</u>, 293 U.S. 474, 483 (1935); <u>see</u> <u>N. Pac. R.R. Co. v. Herbert</u>, 116 U.S. 642, 646 (1886) ("The exaction, as a condition of refusing a new trial, that the plaintiff should remit a portion of the amount awarded by the verdict was a matter within the discretion of the court.").[6] Nonetheless, in a case involving a constitutional challenge to additur, the Supreme Court in <u>Dimick</u> reexamined the validity of the then-accepted practice of remittitur. <u>Dimick</u>, 293 U.S. at 482-86. The Court noted that <u>Blunt</u>, <u>Northern Pacific</u>, and other cases made no "real attempt to ascertain the common law rule on the subject" of remittitur. <u>Id.</u> at 483. After a review of the common law cases and commentaries, the Court reasoned that Justice Story's use of remittitur rested on a shaky legal foundation. <u>Id.</u> at 484-85. The <u>Dimick</u> Court suggested that "if the question of remittitur were now before us for the first time, it would be decided otherwise." <u>Id.</u> at 484.

---

[6] <u>See, e.g.</u>, <u>Gila Valley, Globe & N. Ry. Co. v. Hall</u>, 232 U.S. 94, 103-04 (1914) (stating that a plaintiff could voluntarily remit a jury verdict in response to a motion for new trial); <u>Koenigsberger v. Richmond Silver Mining Co.</u>, 158 U.S. 41, 52 (1895) (holding that when a plaintiff filed for remittitur on part of his judgment as a condition of avoiding a new trial, he "waived all right to object to the order of the court, of the benefit of which he had availed himself").

19

While the Supreme Court decided not to disturb the doctrine of remittitur, which had been "accepted as the law for more than a hundred years," it did not use a "doubtful precedent" to justify the constitutionality of additur. Ibid. The Court acknowledged that whenever a new trial must be granted because a jury's damages award "is palpably and grossly inadequate or excessive," the assessment of damages remains a question of "fact" to be decided by the jury as in the first trial. Id. at 486. The Court then provided a strained rationale for upholding the constitutionality of remittitur and striking down additur. The Court reasoned that in the case of an excessive damages award, "the remittitur has the effect of merely lopping off an excrescence" and that "what remains is included in the verdict . . . found by the jury," but in the case of an inadequate damages award, "an increase by the court is a bald addition of something which in no sense can be said to be included in the verdict." Ibid.

The Court held that additur requires the plaintiff "to forego his constitutional right to the verdict of a jury and accept 'an assessment partly made by a jury which has acted improperly, and partly by a tribunal which has no power to assess.'" Id. at 487 (emphasis added) (quoting J. Lionel Barber & Co., Ltd. v. Deutsche Bank [1919] AC 304 at 335). The Court did not, and perhaps could not, explain why any part of a grossly excessive damages award

20

-- an award returned by a jury that had "acted improperly" -- was entitled to any deference and why the "lopping off an excrescence" was not the very type of judicial factfinding of which it disapproved. See id. at 486-87. In the end, additur was deemed unconstitutional under the Seventh Amendment while remittitur survived, primarily due to its long-standing history in federal jurisprudence. Id. at 484-85, 487-88.

## V.

## A.

By 1917, the practice of remittitur -- "the power of the trial court to put the plaintiff to an election of accepting a reduced verdict or a new trial" -- was "well settled" in New Jersey. Heinz v. Del., Lackawanna & W. R.R. Co., 90 N.J.L. 198, 200 (E. & A. 1917).[7] In Heinz, the plaintiff suffered "damages to his person and property in a railroad crossing accident," and a jury awarded a verdict of $11,300. Id. at 198-99. On appeal, the Supreme Court determined that the verdict was excessive and remitted the award to $9945. Ibid. The plaintiff accepted the remittitur in lieu of a new trial, and the defendant appealed. Ibid. The Court of Errors and Appeals declared that the defendant was not deprived of his constitutional right to trial by jury because the remitted

---

[7] The Court of Errors and Appeals served as New Jersey's court of last resort at that time. Sun Life Assurance Co. v. Wells Fargo Bank, N.A., 238 N.J. 157, 166 n.2 (2019).

amount "is a part of the damages assessed by the jury [and therefore] the defendant cannot be heard to say that such reduced damages were not assessed by the jury."  Id. at 201.

In 1917, additur was also an accepted practice in this State.  Gaffney v. Illingsworth, 90 N.J.L. 490, 492 (E. & A. 1917).  Forty years later, for the first time, this Court addressed a constitutional challenge to additur based on the Dimick decision.  See Fisch v. Manger, 24 N.J. 66, 72-73, 80 (1957).  Looking primarily to New Jersey's jurisprudential history "in ascertaining whether the highly desirable practices of remittitur and additur may be adhered to" under Article I, Paragraph 9 of the New Jersey Constitution, the Court in Fisch took a pragmatic approach to the right to trial by jury.  See id. at 75.  The Court explained that the

> constitutional right of trial by jury relates to substance rather than form and does not preclude efficient procedural devices which, though perhaps not strictly part of the English common law, are nevertheless wholly consistent with the fundamental right of the parties to have the facts determined by a fair and impartial jury acting under appropriate judicial guidance and control.
>
> [Ibid.]

Given "the laudable purpose of avoiding a further trial where substantial justice may be attained on the basis of the original trial," the Court was "satisfied that the practices of remittitur and additur violate none of our

22

constitutional interdictions" when fairly invoked to resolve a "manifest denial of justice." Id. at 80 (quoting Lindroth v. Christ Hosp., 21 N.J. 588, 596 (1956)).[8]

In contrast with the majority, Justice Heher submitted that the additur practice sanctioned by the Court "contravene[d] the essence of the common-law right of trial by jury at the time of the adoption of [New Jersey's] 1776 Constitution" and the jury-trial right guaranteed in the 1947 Constitution. See id. at 86 (Heher, J., concurring).[9] Justice Heher maintained that "[t]he question is one of constitutional power rather than procedural expediency." Id. at 87. He reasoned that if a court does not have "an absolute right to assess unliquidated damages in an action at law for a personal tort," the court should not use the device of additur to impose "its judgment on the unwilling plaintiff" as a substitute for granting a new trial. See ibid.

---

[8] The plaintiff in Fisch suffered serious injuries in an automobile accident. 24 N.J. at 67. The jury returned a damages award of $3000, reimbursing the plaintiff's "actual monetary losses," but allotting him basically "nothing for his suffering and permanent injuries." Id. at 71. The trial judge entered an additur to increase the award to $7500, with the consent of only the defendant. Ibid. Plaintiff appealed. Id. at 67. Although the Court affirmed the practice of additur as constitutionally sound, it ultimately concluded that the trial judge's additur of $7500 was inadequate and therefore "an abuse of discretion." Id. at 80 (quoting Esposito v. Lazar, 2 N.J. 257, 259 (1949)). Accordingly, the Court granted the plaintiff a new trial on damages. Id. at 81.

[9] Justice Heher concurred with the majority that the plaintiff was entitled to a new trial on damages. Id. at 88.

B.

"Our civil system of justice places trust in ordinary men and women of varying experiences and backgrounds, who serve as jurors, to render judgments concerning liability and damages." Johnson v. Scaccetti, 192 N.J. 256, 279 (2007). Although the doctrines of remittitur and additur have long been a part of our jurisprudence, remittitur in particular has come under increasing scrutiny as we have given greater emphasis to the substantial deference that must be accorded a damages award rendered by a jury. Cuevas, 226 N.J. at 485. That substantial deference derives from the recognition that when a case is entrusted to a jury, the jury is responsible for determining the quantum of damages. See ibid.

In recent years, this Court has cautioned that trial courts "must exercise the power of remittitur with great restraint . . . because in our constitutional system of civil justice, the jury -- not a judge -- is charged with the responsibility of deciding the merits of a civil claim and the quantum of damages to be awarded a plaintiff." Id. at 499. Our courts have been advised not to "grant a remittitur except in the unusual case in which the jury's award is so patently excessive, so pervaded by a sense of wrongness, that it shocks the judicial conscience." Id. at 485. We have stressed that "the judge does not sit as a decisive juror and should not overturn a damages award falling within a

24

wide acceptable range -- a range that accounts for the fact that different juries might return very different awards even in the same case." Id. at 486.

The arguments presented in this appeal have compelled this Court to look anew at the fairness of a trial judge granting a remittitur or additur without the mutual assent of the parties.

## VI.

Currently, when a court concludes that a new trial is warranted "based solely on the excessiveness of the jury's damages award, it has the power to enter a remittitur reducing the award to the highest amount that could be sustained by the evidence." Id. at 499 (citing Fertile, 169 N.J. at 500). Although the court has decided that the grossly excessive award is a miscarriage of justice to the defendant, only the plaintiff -- not the defendant -- has the choice to accept the remitted amount or proceed to a new damages trial. Ibid. (citing Fertile, 169 N.J. at 491-92).

The inverse is true in the case of additur. Tronolone, 224 N.J. Super. at 97. When the court decides that a grossly inadequate damages award is a miscarriage of justice to the plaintiff, the court has the power to enter an additur, increasing the award to an amount that could be sustained by the

evidence, but only the defendant -- not the plaintiff -- has the choice to accept the increased amount or proceed to a new damages trial. See ibid.[10]

Remittitur and additur allow just one party the option of avoiding the unnecessary expense and delay of a new trial. The other party is bound by a judge's setting the quantum of damages and denying a new trial -- subject only to an appeal challenging the trial court's exercise of discretion in granting or setting the remittitur or additur amount. See Esposito v. Lazar, 2 N.J. 257, 259 (1949).

Whether by lopping off the excess of an award in a remittitur case or increasing the deficient amount of an award in an additur case, the judge is fixing the quantum of damages by assessing the evidence -- crediting, discrediting, weighing, and balancing evidence, including witness testimony. The heart of the problem is lack of mutual consent to the judge's assessment of the proper quantum of damages. The wronged party gets the short end of the stick. After the trial court concludes that a jury returned a grossly excessive or inadequate damages award, the party entitled to a new trial is denied a new trial if the other party accepts the court's remitted or increased amount. In a remittitur, the plaintiff controls whether the defendant receives a new damages

---

[10] Courts have debated whether the increased amount should be the lowest or just a reasonable amount that could be supported by the evidence. See id. at 99-103.

26

trial, and in an additur, the defendant controls whether the plaintiff receives a new damages trial.

Because both parties are not required to accept the remittitur or additur, a new trial can be denied without the mutual consent of the parties.  Under our court rules, however, <u>both</u> parties generally have the right to demand and receive a jury trial on damages.  <u>See</u> <u>R.</u> 4:35-1(a) ("[A]ny party may demand a trial by jury of any issue triable of right by a jury . . . ."); <u>R.</u> 4:35-1(d) ("When trial by jury has been demanded . . . the trial of all issues so demanded shall be by jury, unless all parties or their attorneys . . . consent to trial by the court without a jury . . . .").  A party entitled to a new damages trial because of a grossly excessive or inadequate damages award should be in no different position.  The current practice, which places the parties on an unequal footing, cannot be squared with fundamental notions of fairness and cannot be justified in the name of judicial efficiency or cost effectiveness.

## VII.

In reexamining long-accepted common law doctrines, such as remittitur and additur, we understand that adherence to stare decisis promotes important values -- stability and predictability in the law.  <u>See</u> <u>Luchejko v. City of Hoboken</u>, 207 N.J. 191, 208-09 (2011).  The common law, however, is also dynamic and allows for the continuing improvement of our system of justice as

27

we seek to correct imperfections in our legal procedures. See State v. Culver, 23 N.J. 495, 505 (1957). As Justice Cardozo explained in his treatise on the common law: "Every new case is an experiment; and if the accepted rule which seems applicable yields a result which is felt to be unjust, the rule is reconsidered." Benjamin N. Cardozo, The Nature of the Judicial Process 23 (1921). "[T]he nature of the judicial process requires the power to revise, to limit, and to overrule if justice is to be done." State v. Witt, 223 N.J. 409, 440 (2015) (quoting State v. Shannon, 210 N.J. 225, 227 (2012)).

In addition to our superintendence over the common law to promote greater equity in our civil justice system, we also exercise constitutional authority over the practices and procedures of our courts, pursuant to Article VI, Section 2, Paragraph 3 of the New Jersey Constitution, to ensure greater fairness in the administration of justice. We have exercised our Article VI, Section 2, Paragraph 3 powers, for example, to prohibit ex parte post-verdict communication between a trial judge and jurors, Davis v. Husain, 220 N.J. 270, 285-86 (2014), to establish procedures that trial judges must follow to accept a waiver of the right to trial by jury, State v. Blann, 217 N.J. 517, 518 (2014), and to require law enforcement officers to make a written record detailing out-of-court identification procedures, State v. Delgado, 188 N.J. 48, 63 (2006).

28

Today, we exercise our superintendence over the common law and our constitutional authority over the practices and procedures of the courts to revise the doctrines of remittitur and additur. We do so to make our civil system of justice fairer -- placing plaintiffs and defendants on a level playing field after a judge grants a motion for a new damages trial and, as an alternative, sets a remittitur or an additur.

We now hold that in the unusual case where a damages award was grossly excessive or grossly inadequate, the trial court retains the power to declare that a jury's damages award shocks the conscience and to grant a new trial or offer the parties a remittitur or an additur. Going forward, however, unless both parties consent to a remittitur or an additur, the court must grant a new trial.

Given our modification of remittitur and additur based on our authority over the common law and practices and procedures of the courts, we need not address the constitutional right-to-jury-trial argument advanced by plaintiff and a number of amici. See Randolph Town Ctr., L.P. v. County of Morris, 186 N.J. 78, 80 (2006) ("Courts should not reach a constitutional question unless its resolution is imperative to the disposition of litigation.").

29

VIII.

Under this new scheme, we recognize that a remittitur and an additur are essentially settlement figures suggested by the trial court. For this approach to work effectively, the trial court must calculate a remittitur or additur in a way that maximizes the potential that the parties can reach a mutually acceptable settlement. That will not occur if the court sets the figure at the highest or lowest damages award that could be sustained by the evidence. In setting the remittitur or additur, the court should not accord any deference to a damages award that shocks the judicial conscience.

When a judge declares that a jury's damages award is so grossly excessive or grossly inadequate "that it shocks the judicial conscience," see Cuevas, 226 N.J. at 485, the jury's appraisal of the evidence leading to an erroneous verdict should not be entitled to any deference. That is so because when the jury's damages award is "so wrong" that the court must grant either a new trial or, alternatively, a remittitur or an additur, the court cannot assume that the jury understood its function or the evidence. See Tronolone, 224 N.J. Super. at 103. Because a damages award so grossly disproportionate to the evidence is not entitled to deference, the court should not "resolve all factual disputes in favor of one party or the other, or try to follow the faulty reasoning

of the jury, or fix the highest or lowest amount a reasonable jury could have awarded without reversal." Id. at 103-04.

Logic suggests that the parties are most likely to mutually agree to a remittitur or an additur that is a fair and reasonable award. A defendant seeking a new trial based on a grossly excessive damages award is unlikely to consent to a remittitur that is the highest amount that a reasonable jury could have awarded the plaintiff, and the same reasoning applies to the lowest amount in the case of additur. If the objective is to encourage settlement, then the remittitur or additur must be an amount that both parties would deem reasonable -- not the highest or lowest sustainable amount.

The methodology recommended by Judge Cohen in Tronolone is the most sensible way to proceed. In setting "the proper amount of an additur or remittitur, the [trial] court must attempt the difficult task of determining the amount that a reasonable jury, properly instructed, would have awarded." Tronolone, 224 N.J. Super. at 103. In short, in fixing the remittitur or additur amount, the court must "reach a fair damage verdict on the basis of the evidence it saw and heard."[11] Id. at 104.

---

[11] Trial judges need not place their findings on the record given that the remittitur or additur amount is not binding on the parties and not appealable.

31

Even if the parties do not consent to the remittitur or additur fixed by the court, the court's evaluation of the damages may spur the parties to reach a settlement on their own terms. When a new trial on damages must be granted because the award was grossly excessive or grossly inadequate, the parties may focus on the uncertain outcome of the new trial and perhaps be more risk averse in venturing another round with a jury.

We do not expect our ruling to have a substantial impact on the practice in our civil courts. According to a review by the Conference of Civil Presiding Judges, over the past three years, our trial courts granted only eight remittiturs and additurs, and only three were accepted. Setting remittiturs and additurs at a fair and reasonable amount -- even with the additional requirement of mutual consent -- may elicit a higher acceptance rate. In any event, when a trial court declares that a damages award is so grossly excessive or inadequate that it shocks the judicial conscience, the parties are entitled to a new trial, unless the court offers a remittitur or additur that the parties mutually accept.

The acceptance of a remittitur or an additur is optional to both parties. The absence of mutual consent means that the case proceeds to a second jury for a new damages trial. Although the party objecting to the court's grant of a new trial may appeal that decision, no appeal may be filed from the court's setting of the remittitur or additur amount. The parties have the power simply

32

to reject the amount fixed by the court if they disagree with the court's assessment.

Because the trial court in this case declared that the damages award was so grossly inadequate that it shocked the judicial conscience and because Orientale did not consent to the court's additur, Orientale is entitled to a new trial on damages.[12]

IX.

In summary, the trial court may not disturb a damages award entered by a jury unless it is so grossly excessive or so grossly inadequate "that it shocks the judicial conscience." See Cuevas, 226 N.J. at 485.[13] If a damages award meets that standard, then the court must grant a new trial. The court also has the option of recommending to the parties a remittitur or an additur in lieu of a new trial. In setting a remittitur or an additur, the court must determine "the amount that a reasonable jury, properly instructed, would have awarded."

---

[12] In light of our resolution of this issue, we need not examine the particulars of how the trial court determined the additur amount.

[13] It bears mentioning that, in some instances, a damages award may be so grossly excessive that it may demonstrate that the jury was swayed by "prejudice, partiality or passion." See Taweel v. Starn's Shoprite Supermarket, 58 N.J. 227, 231 (1971); see also Tronolone, 224 N.J. Super. at 98. In such an exceptional case, where the entire verdict is tainted, a new trial on both liability and damages must be granted. Tronolone, 224 N.J. Super. at 98.

Tronolone, 224 N.J. Super. at 103. The acceptance of a remittitur or an additur requires the mutual consent of the parties. If either party rejects a remittitur or an additur, the case must proceed to a new trial on damages.

In this case, Orientale did not consent to the additur and therefore she is entitled to a new damages trial. We remand to the trial court for proceedings consistent with this opinion.

CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE ALBIN's opinion.

34